Margie P. HOLLINS, et al., Appellants,

v.

Robert Lee POWELL, et al., Appellees.

No. 84–1806.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1985.

Decided Sept. 11, 1985.

Rehearing and Rehearing En Banc Denied Oct. 14, 1985.

Robert Lee Powell, pro se.

Richard H. Edwards, St. Louis, Mo., for City of Wellston.

Frank Susman, St. Louis, Mo., for appellees.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BOWMAN, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

The defendants, the City of Wellston and Robert Powell, appeal from a judgment entered by the district judge[1] upon a jury verdict finding them liable for violating the plaintiffs'—Margie Hollins', Mamie Wallace's, Annette McNeil's and Lloyd Brown's —constitutional rights. We affirm the liability verdict, but remand this case to the district court with orders to remit the compensatory damage award to $40,000.00, and to remit the punitive damage award against Powell to $2,000. If the plaintiffs decline to accept the remittitur, they may have a new trial on the issue of damages.

## I. FACTS

The plaintiffs all were commissioners on the Land Clearance Authority and Housing Authority (LCRA/HA) for the City of Wellston (City). They were appointed to these volunteer posts by Powell's predecessor in the mayor's office. Powell was elected mayor of the City on November 17, 1982. Pursuant to Missouri law, the mayor of a city has the sole authority to appoint individuals to serve on a commission created by a city council. *Mo.Rev.Stat.* § 99.050 (1978). After assuming office, Powell began to question the legality of the plaintiffs' appointments to the LCRA/HA. Under Missouri law, a certificate of appointment is to be filed with the city clerk after a commissioner has been appointed by a mayor. *Mo.Rev.Stat.* § 99.380 (1978). Apparently, Powell was unable to locate the plaintiffs' certificate of appointment. He appointed his own commissioners to the LCRA/HA.

On December 8, 1982, the plaintiffs arrived at City Hall for a regularly scheduled meeting of the LCRA/HA. The LCRA/HA had rented a room on the second floor of the building, directly across from the Mayor's office. Shortly after the meeting was called to order, Powell interrupted the meeting. He asked the plaintiffs if they had received a letter from him which had questioned the legality of their appointments. The plaintiffs replied that they had, and that they were prepared to show him their letters of appointment. Powell, not wanting to see the letters, asked the plaintiffs to adjourn the meeting and to refrain from meeting until it was determined that their appointments were legal. The plaintiffs refused, reminding Powell that they had the right to occupy the room the LCRA/HA had rented and that there was a legal procedure for removing commissioners from office. *See Mo.Rev.Stat.* § 99.070 (1978).

At some point, Powell left the room and called the police. The LCRA/HA's attorney and executive director also appeared at the meeting at some point. The police arrived and, after conferring briefly with Powell, asked the plaintiffs to adjourn the meeting. Upon advice of counsel, the plaintiffs refused. The police then arrested the plaintiffs, under charges of "unlawful assembly" and "failure to obey the command of a police officer," and took them to the police station. The plaintiffs were detained at the station between one—four hours, and were released on personal recognizance without charges being filed. Upon leaving the station, the plaintiffs were photographed by a member of the press. The story was given coverage by local and state media.

The plaintiffs filed a suit in federal district court against Powell, apparently in both his individual and official capacities, and against the City, claiming a violation of

---

1. The Honorable Stephen N. Limbaugh, United States District Court for the Eastern District of Missouri.

their constitutional rights in contravention of 42 U.S.C. § 1983 (1982).[2] At trial, each of the plaintiffs testified to having suffered embarrassment and public humiliation as a result of the incident. All the plaintiffs now have an arrest record, and none had one before the arrest in this case. One plaintiff testified to losing her job as a result of the incident, and another plaintiff testified to having had difficulty obtaining a job because of the arrest. Two of the plaintiffs testified to experiencing an aggravation of existing medical problems as a result of the incident.

The jury returned a verdict for the plaintiffs, awarding them $300,000.00 against the City and Powell in compensatory damages, and awarding them $500,000.00 against Powell in punitive damages. On June 1, 1984, the district court awarded the plaintiffs $33,319.50 in attorney's fees and $1,712.55 in costs.

## II. DISCUSSION

The City argues, first, that the district court erred in denying its motion for a new trial because the plaintiffs did not produce sufficient evidence to prove that Powell's acts constituted those of the City. We note that the City presented the defense for both Powell and itself in the district court. There is no evidence on the record to indicate that the City tendered, as part of its defense, evidence that Powell was acting solely in his individual capacity and not as Mayor of the City. It is only on appeal that the City has divorced itself from Powell.

As a threshold matter, we note that the City failed to move for a directed verdict at the close of all the evidence. As a result, our review of the district court's denial of the City's motion for a new trial is strictly limited. A party's failure to move for a directed verdict at the close of all the evidence precludes appellate review of the

sufficiency of the evidence except for plain error. *Ferren v. Richards Mfg. Co.*, 733 F.2d 526, 528 (8th Cir.1984); *Krueger v. State Farm Mut. Auto Ins. Co.*, 707 F.2d 312, 313–14 (8th Cir.1983); *Myers v. Norfolk Livestock Mkt., Inc.*, 696 F.2d 555, 559 (8th Cir.1982); *Harris v. Zurich Ins. Co.*, 527 F.2d 528, 529–30, 530 n. 1 (8th Cir. 1975); *Lange v. Schultz*, 627 F.2d 122, 128 (8th Cir.1980). However, the City appealed from the denial of the post-trial motion and designated the sufficiency of the evidence as an issue for appeal. As a result, we may determine whether the district court abused its discretion in denying the motion and whether, as a matter of law, the denial of the motion was erroneous because there is an absolute absence of evidence to support the jury's verdict. *Krueger*, 707 F.2d at 314–15; *Lange*, 627 F.2d at 128, 128 n. 5; *Harris*, 527 F.2d at 529–30, 530 n. 1.

In *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the United States Supreme Court overruled *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and held that municipalities were no longer "wholly immune from suit under § 1983." *Monell*, 436 U.S. at 663, 98 S.Ct. at 2022. However, the Court also held that a municipality could not be held liable, under a theory of respondeat superior, simply because it employs a tortfeasor. *Id.* at 691, 98 S.Ct. at 2036. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. at 2037.

Particularly when dealing with municipal officials, other than a municipality's formal decision-making body, courts have struggled with the issue of when an official's "edicts or acts may fairly be said to represent official policy * * *." *See, e.g., Wil-*

---

**2.** 42 U.S.C. § 1983 provides in pertinent part:
  Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State * * * subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to

the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress * * *.

195

*liams v. Butler*, 746 F.2d 431, 434–39 (8th Cir.1984), *vacated*, 762 F.2d 73 (8th Cir. 1985), (en banc) *aff'g by an equally divided court*, No. LR C 81 633, slip op. (E.D.Ark., Aug. 17, 1983) (unpublished); *Wilson v. Taylor*, 733 F.2d 1539, 1545–47 (11th Cir. 1984); *Bennett v. City of Slidell*, 728 F.2d 762, 765–69 (5th Cir.1984) (en banc), *cert. denied*, —— U.S. ——, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985); *Wellington v. Daniels*, 717 F.2d 932, 935–37 (4th Cir.1983); *Rookard v. Health & Hosps. Corp.*, 710 F.2d 41, 45–46 (2d Cir.1983); *McKinley v. City of Eloy*, 705 F.2d 1110, 1116–17 (9th Cir.1983); *Black v. Stephens*, 662 F.2d 181, 191 (3d Cir.1981), *cert. denied*, 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982). However, when the mayor of a city acts pursuant to authority that can fairly be said to have been granted under the type of government that the city operates, the mayor's actions or edicts "may fairly be said to represent official policy," *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037, and thus fall squarely within the perimeters drawn in *Monell*.

■ Accordingly, when a mayor pursuant to the authority of his office violates a citizen's constitutional rights, a municipality is liable for damages under § 1983. *Thomas v. Sams*, 734 F.2d 185, 192, 193 (5th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985); *Berdin v. Duggan*, 701 F.2d 909, 913–14 (11th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 239, 78 L.Ed.2d 230 (1983). *See generally Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). Further, a city's liability is not contingent upon repeated constitutional violations by the mayor or city council. *See generally id.*

The question of whether an isolated, unconstitutional violation will render a city liable under § 1983 goes to the question of imputing liability to the City for the acts of a lower level city employee or official. In *City of Oklahoma City v. Tuttle*, —— U.S. ——, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), the Supreme Court held that a city policy may not be inferred from the single uncon-

stitutional act of a police officer. —— U.S. at ——, 105 S.Ct. at 2436. To allow such an inference would be to allow a:

§ 1983 plaintiff to establish municipal liability without submitting proof of a single action taken by a municipal policymaker. The * * * origins of *Monell's* "policy or custom" requirement should make clear that, at the least, that requirement was intended to prevent the imposition of municipal liability under circumstances where no wrong could be ascribed to municipal decisionmakers.

*Id.* 105 S.Ct. at 2435. Where a mayor pursuant to the authority of his office violates a citizen's constitutional rights, it is clear that a wrong may be ascribed to municipal decisionmakers, and a single, unconstitutional act—perpetrated within the scope of authority delegated to the office—will be sufficient to support § 1983 liability. *See id.* at 2440–41 (Brennan, J., concurring).

■ Nor do we think that a mayor and a city council must act together in committing a constitutional violation before a city will be held liable under § 1983. For purposes of liability, it is sufficient if the city council or mayor acts alone—abusing the authority duly delegated to the office—to violate the constitutional rights of another. Further, it is only when a mayor or city council has abused the authority delegated to the relevant office that a city will be held liable.

■ It is clear that, by ordering their arrest, Powell violated the plaintiffs' constitutional rights; this was not merely an aberrant act of a high city official. The plaintiffs were required to establish, as part of their claim, that Powell had under the governmental structure of the City of Wellston the authority to order their arrest or "removal" from City Hall. They accomplished this task through Powell's testimony and the testimony of the arresting officers. The City did not dispute this element of the claim. Thus, the *only* evidence on the record regarding Powell's authority to order the police to remove the plaintiffs from City Hall was to the effect that he

had that authority. As a result we are unable to say that the district court committed plain error or abused its discretion by denying the City's motion for a new trial, or that there was an absolute absence of evidence to support the jury's verdict.

The City argues next that the district court erred by overruling the City's objection to the testimony of the City's attorney. The district court based its decision on the fact that it had ruled previously that the defendants had waived the attorney-client privilege.

Before trial, the plaintiffs sought to depose the City's attorney. The City filed a motion to quash the deposition, with an alternative request for a protective order, and the plaintiffs filed a motion to compel the deposition. The district court granted the plaintiffs' motion, noting that it appeared the City and Powell would raise advice of counsel as a defense, and held that the attorney-client privilege would be waived under those circumstances. The district court based its observations on the pleadings and the plaintiffs' assertions. Because the defendants had not yet raised advice of counsel as a defense, the court granted them seven days from entry of the order to inform the court whether the communications with the attorney would be part of the defense. The defendants failed to file a motion for reconsideration.

The City argues that because the district court erred by granting the motion to compel the deposition, it also erred in overruling the City's objection to the attorney's testimony at trial. We disagree. The district court properly granted the motion to compel and, although we do so for a different reason than did the district court, we hold that the defendants had waived the attorney-client privilege by the time the attorney was called as a witness.

■ Because the plaintiffs have sued the defendants for a violation of federal law, the federal law of privilege applies to this issue. *Fed.R.Evid.* 501. Initially, we note that the party who claims the benefit of the attorney-client privilege has the burden of establishing the right to invoke its

protection. *Diversified Indus., Inc. v. Meredith,* 572 F.2d 596, 609 (8th Cir.1978) (en banc); *Bouschor v. United States,* 316 F.2d 451, 456 (8th Cir.1963). The defendants clearly failed to meet this burden as far as the deposition of the attorney is concerned. They adduced no evidence to support their assertion of the privilege. Thus, the district court did not err by granting the plaintiffs' motion to compel the deposition.

■ During the attorney's deposition, the City objected whenever it perceived that a question covered by the privilege was asked, and then instructed the attorney to answer the question. The plaintiffs argue that by proceeding in this manner the defendants waived the privilege. Under the circumstances of this case, the defendants preserved their right to claim the privilege at trial as to those questions to which they had objected. Had the defendants interrupted the deposition every time it objected to a question on the basis of privilege, and sought a protective order from the district court, they would have been violating the court's previous order. Thus, we reject the contention that the defendants waived the privilege during the deposition. Nonetheless, we hold that the defendants did waive the privilege during trial.

■ A client may waive the attorney-client privilege, and may do so either expressly or by implication. *Sedco Int'l, S.A. v. Cory,* 683 F.2d 1201, 1206 (8th Cir.), *cert. denied,* 459 U.S. 1017, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982); *Tasby v. United States,* 504 F.2d 332, 336 (8th Cir.1974), *cert. denied,* 419 U.S. 1125, 95 S.Ct. 811, 42 L.Ed.2d 826 (1975); *Schwimmer v. United States,* 232 F.2d 855, 863 (8th Cir.), *cert. denied,* 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956). Waiver will be implied when a client has testified concerning portions of the attorney-client communication. *Sedco,* 683 F.2d at 1206; *Steen v. First Nat'l Bank of Sarcoxie,* 298 F. 36, 41 (8th Cir. 1924).

On plaintiffs' direct examination of him, Powell testified as to the substance of his conversations with the City's attorney, as well as to the substance of his conversations with his own attorney. This testimony occurred before the City's attorney was called as a witness. Because the City's attorney failed to object to the plaintiffs' relevant questions of Powell, it waived the attorney-client privilege. Thus, we need not determine whether the district court erred by relying on its pretrial order in overruling the City's objection to the attorney's testimony, for the privilege had been waived by that time.

Finally, the City and Powell argue that the $300,000.00 compensatory damage award is excessive, and Powell argues that the $500,000.00 punitive damage award is excessive. We agree.

The defendants preserved the excessiveness of the verdicts as an issue on appeal by presenting the issue to the district court in their motion for a new trial. *DeWitt v. Brown,* 669 F.2d 516, 524 (8th Cir.1982). This court has noted repeatedly that the excessiveness of a verdict is basically an issue for the trial court, and that we consider review only in those rare situations where we are pressed to conclude that there is a plain injustice, or a monstrous or shocking result. *Ferren,* 733 F.2d at 531; *Vanskike v. Union Pac. R.R.,* 725 F.2d 1146, 1149–50 (8th Cir.1984) (quoting *Solomon Dehydrating Co. v. Guyton,* 294 F.2d 439, 447–48 (8th Cir.), *cert. denied,* 368 U.S. 929, 82 S.Ct. 366, 7 L.Ed.2d 192 (1961)); *Taken Alive v. Litzau,* 551 F.2d 196, 198 (8th Cir.1977) (quoting *Solomon,* 294 F.2d at 447–48). As the plaintiffs correctly note, when reviewing damage awards "each case must be evaluated as an individual one, within the framework of its distinctive facts." *Vanskike,* 725 F.2d at 1150. Given the facts in this case, we believe that an affirmance of the damage awards would result in plain injustice. The compensatory awards and the punitive award are shocking.

We are unable to accept the plaintiffs' argument that there is overwhelming evidence to support the compensatory award of $75,000.00 to each plaintiff. The plaintiffs were arrested and detained for one—four hours. Because of the incident, and for the first time, each of the plaintiffs has an arrest record. Each plaintiff testified to having suffered embarrassment and public humiliation as a result of their arrest. Two plaintiffs testified to having employment problems, and two plaintiffs testified to suffering medical difficulties as a result of the incident. Only one plaintiff offered evidence to corroborate her testimony regarding employment difficulties. Neither of the plaintiffs suffering medical difficulties offered medical evidence in support of their claims.

We are appalled always at the self-righteous arrogance which permits a government official to misuse the authority granted by his or her office. This case is no exception. Nevertheless, we are unable to justify an award of $75,000.00 in compensatory damages per plaintiff, and we order a remittitur to the amount of $10,000.00 per plaintiff for a total award of $40,000.00 in compensatory damages. By ordering this remittitur, we in no way demean or slight the injuries inflicted upon the plaintiffs by the City, acting through its Mayor. This was a foolish, ill considered act by a black mayor of limited resources (Powell was paid nineteen thousand dollars annually for full time position as mayor and has since lost that post) in a black community whose innocent taxpayers must bear the pecuniary liability for this constitutional tort. We have read the relevant portions of the trial transcript—particularly the plaintiffs' testimonies—very carefully, and we believe that $10,000.00 is adequate compensation for the injuries they suffered.

We likewise order a remittitur of the punitive damage award returned against Powell. Punitive damages may be awarded in a § 1983 case against a defendant whose conduct has involved a reckless or callous indifference to the federally protected rights of others. *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983), *aff'g Wade v. Haynes,*

663 F.2d 778 (8th Cir.1981); *Block v. R.H. Macy Co.*, 712 F.2d 1241, 1246 (8th Cir. 1983). *See also* Note, *Punitive Damages in Section 1983 Actions: The Eighth Circuit's Requirement of Malicious Intent,* 16 *Creighton L.Rev.* 898 (1983) (excellent discussion of the justification for awarding punitive damages in § 1983 actions and analysis of review of such awards in the Eighth Circuit). Punitive damages may be awarded to punish a defendant for outrageous conduct and to deter similar conduct in the future. *Smith,* 461 U.S. at 54, 103 S.Ct. at 1639 (quoting *Restatement (Second) of Torts* § 908(1) (1979)). "The focus is on the character of the tortfeasor's conduct—whether it is of the sort that calls for deterrence and punishment over and above that provided by compensatory awards." *Smith,* 461 U.S. at 54, 103 S.Ct. at 1639.

There is no question that Powell's behavior calls for an award of punitive damages. In addition, it appears as if the City and Powell bear joint and several liability for the compensatory damage award, and it is unlikely that the City will recover much of this award from Powell. Thus, it is the City which is bearing the brunt of the inexcusable act of its Mayor. Nevertheless, the amount of the punitive damages awarded must bear a reasonable relationship to the injury inflicted. *Anthan v. P.A.T.C.O.,* 672 F.2d 706, 712 (8th Cir.1982) (quoting *Northern v. McGraw-Edison Co.,* 542 F.2d 1336, 1350 (8th Cir.1976), *cert. denied,* 429 U.S. 1097, 97 S.Ct. 1115, 51 L.Ed.2d 544 (1977)). Further, in assessing punitive damages, it is appropriate to consider the defendant's net worth. *Bankers Life & Casualty Co. v. Kirtley,* 307 F.2d 418, 425 (8th Cir.1962); *Restatement (Second) of Torts,* § 908(2) comment e (1977).

Powell has lost his position as Mayor, and he appears to be under severe financial constraints. We can see neither the justice nor sense in affirming a verdict which cannot possibly be satisfied. The purpose of punitive damages is to punish Powell for outrageous conduct, not to drain him of his life's blood. We note also that the plaintiffs received an award of attorneys' fees and costs and thus do not need to rely on either damage award to pay for their attorney's services. The statement in *Bankers Life & Casualty Co.,* 307 F.2d at 425: "The record with respect to Banker's financial status is not such as to justify the extremely large award of exemplary damages" is certainly apropos to Powell's situation. We believe an award of $2,000 would serve the purpose of punishing Powell for his callous indifference to the plaintiffs' constitutional rights, and also satisfy the deterrent purpose of punitive damages, over and above that provided by the compensatory damage award.

Accordingly, we affirm the judgment and remand this case to the district court with orders to reduce the compensatory damage award to $40,000.00 and to reduce the punitive damage award to $2,000. If the plaintiffs will not accept a remittitur, they are free to retry the issue of damages before another jury. *Everett v. S.H. Parks & Assocs., Inc.,* 697 F.2d 250, 253 (8th Cir. 1983); *Restatement (Second) of Torts* § 908 comment d (1977).