805 F.2d 120
 Bankr. L. Rep. P 71,525, 22 Fed. R. Evid. Serv. 52
In the Matter of BEVILL, BRESLER & SCHULMAN ASSET MANAGEMENT
CORPORATION, Debtor-in-Possession.
Appeal of John D. ROONEY.
Appeal of Robert L. BEVILL.
In re BEVILL, BRESLER AND SCHULMAN INC., Debtor.
Appeal of John D. ROONEY.
Appeal of Robert L. BEVILL.
 Nos. 85-5828, 85-5851, 85-5829 and 85-5850.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 16, 1986.
Decided Nov. 13, 1986.
 
 Dominic F. Amorosa (argued), Dominic F. Amorosa, P.A., South Orange, N.J., for appellant, John D. Rooney.
 Lawrence V. Senn, Jr., Audrey Strauss (argued), Mudge Rose Guthrie Alexander & Ferdon, New York City, for appellant, Robert L. Bevill.
 Jack M. Zackin (argued), Ravin, Greenberg & Zackin, P.A., Roseland, N.J., for appellee, Saul S. Cohen, Trustee of Bevill, Bresler & Schulman Asset Management Corp.
 William H. Horton (argued), McCarter & English, Newark, N.J., for appellee, Richard W. Hill, Esq., Trustee under the Securities Investor Protection Act for the Liquidation of Bevill Bressler & Schulman, Inc.
 Before SEITZ, SLOVITER, Circuit Judges, and ROSENN, Senior Circuit Judge.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 This appeal arises out of two related proceedings currently before the district court: the Chapter 11 reorganization of Bevill, Bresler & Schulman Asset Management Corporation (AMC), 11 U.S.C. Sec. 1101, and the liquidation of Bevill, Bresler & Schulman, Inc. (BBS) under the Security Investor Protection Act (SIPA), 15 U.S.C. Sec. 78aaa. Intervenors John D. Rooney and Robert L. Bevill, two principals of the corporations, appeal the order of the district court directing Gilbert Schulman, president of AMC, and Hellring, Lindeman, Goldstein, Siegal & Greenberg (Hellring, Lindeman), counsel for BBS, to respond to questions posed in depositions by the trustees for AMC and BBS. The order permits the trustees to discover the substance of certain meetings that took place between the law firm and the principals of the corporations before the Chapter 11 petition was filed. Because Rooney and Bevill allege that the district court's order violates their attorney-client privilege, we have jurisdiction under In re Grand Jury Proceedings, 604 F.2d 798 (3d Cir.1979) (FMC Corp.).
 
 I.
 
 2
 We turn first to the facts as narrated by the district court. Gilbert Schulman first became aware that AMC was in financial difficulties on March 19, 1985, when Robert Bevill telephoned him in Greece. After talking again with Bevill on the following day, Schulman flew back to the United States. According to Schulman, he was unable to obtain any information about AMC until he consulted with Hellring, Lindeman on March 25, 1985.
 
 
 3
 Between March 25, 1985 and April 7, 1985, Schulman met with Hellring, Lindeman almost daily. Other principals of BBS and AMC, including Bevill and Rooney, were present at some of these meetings.
 
 
 4
 When Schulman first met with Hellring, Lindeman, he explained that he was seeking both personal and corporate legal advice. In his deposition, he testified that with regard to the March 26th meeting:
 
 
 5
 I stated to Mr. Hellring and Mr. Goldstein that I had arranged for Mr. Bevill to come down and meet them and at that point I had said to them that "Possibly you will represent me, possibly you will represent Mr. Bevill and me, possibly you will represent the firms," but I was definitely seeking personal legal advice at that time.
 
 
 6
 On March 31, 1985, Hellring, Lindeman was retained to represent BBS. In addition, it continued to consider whether it would represent the principals of BBS. On April 4, 1985, Hellring, Lindeman informed the principals that they should obtain separate counsel.
 
 
 7
 On April 7, 1985, AMC filed a petition for bankruptcy under Chapter 11 of the Bankruptcy Code. A trustee was subsequently appointed by the district court. On April 8, the SEC filed a civil complaint in the district court alleging fraud against AMC, BBS, and the principals of the corporations, including appellants. In addition, the SEC began a criminal investigation, and there is currently a grand jury investigation into the affairs of the two corporations. On May 8, the district court placed BBS under a SIPA receivership and the SIPA trustee commenced a liquidation proceeding.
 
 
 8
 On May 13, 1985, the counsel for the AMC trustee began to depose Schulman. By the consent of the parties, this deposition was conducted as a joint proceeding in the AMC Chapter 11 proceeding, the BBS SIPA liquidation, and the SEC proceeding. The AMC trustee sought to depose Schulman as to the substantive communications between Hellring, Lindeman and the principals, and indicated that the trustee had waived AMC's attorney-client privilege. Schulman's counsel instructed Schulman not to answer the questions. Counsel for the other principals also instructed Schulman not to respond, asserting the existence of a joint defense privilege.
 
 
 9
 On May 21, 1985, the deposition of Schulman resumed, and the AMC trustee began questioning Schulman about the circumstances surrounding the meetings with counsel, including the dates of the meetings, who was present, and whether the discussions involved personal or corporate matters. Once again, counsel for the other principals objected on the grounds of a joint defense privilege.
 
 
 10
 The AMC and BBS trustees and the SEC subsequently filed motions with the district court for an order directing the principals and Hellring Lindeman to respond to a series of questions as to the circumstances surrounding the meetings. In opposition to these motions, Rooney filed an unsworn affirmation with the district court stating that he met with counsel for personal advice and with the expectation that the communications would be confidential. He further stated that he would not have met with counsel without the assurance of confidentiality.
 
 
 11
 After a hearing, the district court ordered Bevill, Rooney, Schulman, Robert Levine, another principal, and Hellring, Lindeman to answer written interrogatories about the scope of counsel's representation. Bevill and Rooney refused to answer the interrogatories on the ground of the fifth amendment. Schulman stated that he attended all meetings except the March 31st meeting for the purpose of securing personal legal advice. Levine concurred in this statement, and also stated that the participants in the meetings were engaged in a joint defense effort. Schulman, however, has asserted in a letter to the BBS trustee from his counsel that he was never part of a joint defense.
 
 
 12
 Hellring, Lindeman confirmed in their answers to the interrogatories that the principals had sought both personal and corporate legal advice at the meetings that occurred from March 25th through April 4th. In a letter to the BBS trustee, it further explained its understanding of its representation:
 
 
 13
 Our firm was initially consulted on Monday, March 25, 1985. On that date and during the week of March 25, 1985 we were consulted by officials of Bevill, Bresler & Schulman, Inc. on a confidential and privileged basis for the purpose of personal representation as well as corporate representation of Bevill, Bresler & Schulman, Inc. and other companies.
 
 
 14
 We were not retained until Sunday, March 31, 1985 on which date we agreed to represent Bevill, Bresler & Schulman, Inc., the broker/dealer and its affiliated broker/dealer companies and to consider further the matter of representation for the individuals and other corporations.
 
 
 15
 During the next few days we continued to be consulted by officials of Bevill, Bresler & Schulman, Inc. on a confidential and privileged basis for purposes of personal representation and to consider the need therefor.
 
 
 16
 Within a few days of March 31, 1985 we advised each individual official to retain separate and individual counsel....
 
 
 17
 The trustees, relying on their waiver of the corporations' attorney-client privileges, moved for an order directing Schulman and Hellring, Lindeman to testify about the substance of the meetings insofar as they related to the affairs of the two corporations and Schulman's activities as a director or officer of the corporations. Bevill and Rooney opposed the motions based on their attorney-client privileges and a joint defense privilege.
 
 
 18
 After hearing argument from counsel on the trustees' motions, the district court, in an oral opinion, granted the motions in part. Relying on the opinion of In re Grand Jury Investigation, No. 83-30557, 575 F.Supp. 777 (N.D.Ga.1983), the court held that a corporate officer must satisfy the following test to assert a personal claim of attorney-client privilege as to communications with corporate counsel:
 
 
 19
 First, they must show they approached [counsel] for the purpose of seeking legal advice. Second, they must demonstrate that when they approached [counsel] they made it clear that they were seeking legal advice in their individual rather than in their representative capacities. Third, they must demonstrate that the [counsel] saw fit to communicate with them in their individual capacities, knowing that a possible conflict could arise. Fourth, they must prove that their conversations with [counsel] were confidential. And, fifth, they must show that the substance of their conversations with [counsel] did not concern matters within the company or the general affairs of the company.
 
 
 20
 575 F.Supp. at 780.
 
 
 21
 The court rejected Rooney's claim that he consulted with counsel for the sole or primary purpose of securing personal legal advice, finding such a claim unsupported by the evidence. It then turned to the principals' contention that the corporate communications were indistinguishable from those that related to their personal legal problems, and that, therefore, all communications are privileged. The court agreed with Bevill and Rooney insofar as the trustees sought to obtain information about meetings prior to March 31st when Hellring, Lindeman agreed to represent BBS. The court thus held that these communications were privileged. The trustees do not appeal this ruling.
 
 
 22
 It, however, rejected the appellants' claim of a blanket privilege for those meetings that occurred after March 31st. It found that once Hellring, Lindeman agreed to represent BBS, it was to BBS that the lawyers owed any duty. Further, based on counsel's knowledge of BBS and AMC when the bankruptcy petition was filed, the court found that "[i]t is obvious that immediately after March 31, 1985, Hellring, Lindeman turned its attention to the affairs of its corporate clients." Finally, the court stated that the only personal advice that had been identified was that relating to separate representation.
 
 
 23
 The court also rejected Bevill's and Rooney's claim of a joint defense privilege, finding that they did not bear their burden of showing that a joint defense in fact existed.
 
 
 24
 The district court ordered Hellring, Lindeman to testify as to all communications about the corporations and the roles and functions of the officers that took place after the law firm agreed to represent BBS. It further held that no questions could be asked concerning separate representation or the officers' potential personal liabilities, unless the communications also related to the business and assets of the corporations or the roles of the principals in the corporations. Finally, the court stated that Hellring, Lindeman could submit any communications it was doubtful about to the court for in camera inspection. This appeal followed.
 
 II.
 
 25
 Bevill and Rooney claim that the district court's order directing disclosure of the substantive communications with counsel between March 31st and April 4th violates their attorney-client privilege. In addition, Bevill claims that such disclosure is barred by the joint defense privilege.
 
 
 26
 Privileges in federal court are "governed by the principles of common law as they may be interpreted ... in light of reason and experience." Fed.R.Evid. 501. Whether there is a valid claim of privilege is decided on a case-by-case basis. See Upjohn Co. v. United States, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Although the applicability of a privilege is a factual question, determining the scope of a privilege is a question of law, subject to plenary review. See United States v. Liebman, 742 F.2d 807, 809 (3d Cir.1984).
 
 A.
 
 27
 The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in observance of the law and administration of justice." Upjohn, supra, 449 U.S. at 389, 101 S.Ct. at 682, 66 L.Ed.2d 584. This privilege applies to corporations as well as individuals. Id. at 390, 101 S.Ct. at 683, 66 L.Ed.2d 584. As the Supreme Court has recognized, however, "[t]he administration of the privilege in the case of corporations ... presents special problems. As an inanimate entity, a corporation must act through agents." Commodity Futures Trading Comm'n. v. Weintraub, 471 U.S. 343, 105 S.Ct. 1986, 1991, 85 L.Ed.2d 372 (1985).
 
 
 28
 In this case, we address the relationship between a corporation's waiver of its privilege and the individual directors' assertion of a claim of personal attorney-client privilege with respect to counsel consulted on both a personal and corporate basis after the counsel has been retained by the corporation.[1] The parties agree that under Weintraub, supra, the trustees had the power to waive the corporations' attorney-client privilege regarding prebankruptcy communications with counsel. They also agree that the directors or officers may have an individual attorney-client privilege apart from those of the corporations. The dispute centers on whether the individuals' assertion of an attorney-client privilege can prevent the disclosure of corporate communications with corporate counsel when the corporation's privilege has been waived.
 
 
 29
 As we understand appellants' position, they claim that the district court erred as a matter of law in holding that communications related to their role as corporate officers were not privileged. They contend that because their personal legal problems were inextricably intertwined with those of the corporation, disclosure of discussions of corporate matters would eviscerate their personal privileges. They therefore assert that a blanket privilege should be applied to all communications with counsel between March 31st and April 4th.
 
 
 30
 The appellants' argument, however, does not pay sufficient attention to the fact that under existing law, any privilege that exists as to a corporate officer's role and functions within a corporation belongs to the corporation, not the officer. See Weintraub, supra, 471 U.S. at 348, 105 S.Ct. at 1991, 85 L.Ed.2d 372 ("Displaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties."). Because a corporation can act only through its agents, a corporation's privilege consists of communications by corporate officials about corporate matters and their actions in the corporation. A corporate official thus may not prevent a corporation from waiving its privilege arising from discussions with corporate counsel about corporate matters. In re Grand Jury Investigation, 599 F.2d 1224, 1236 (3d Cir.1979) (Sun Co.); In re Grand Jury Subpoena Duces Tecum, 391 F.Supp. 1029, 1034 (S.D.N.Y.1975).
 
 
 31
 The two decisions cited by appellants, In re Citibank v. Andros, 666 F.2d 1192 (8th Cir.1981) and Diversified Industries, Inc. v. Meredith, 572 F.2d 596 (8th Cir.1977), do not support their position that they may assert their personal privilege over the corporation's waiver with regard to corporate matters. Rather, these two cases simply recognize that an individual officer may have an individual claim of attorney-client privilege with regard to communications with corporate counsel.
 
 
 32
 Moreover, we find that appellants' position is contrary to the public policies identified by the Supreme Court in Weintraub. The Weintraub Court found that permitting a bankrupt corporations' management to assert the corporation's privilege against the bankruptcy trustee would defeat the Bankruptcy Code's goal of uncovering insider fraud. Weintraub, supra, 471 U.S. 354, 105 S.Ct. at 1994, 85 L.Ed.2d 372. To provide a blanket privilege regarding all discussions of corporate matters on the basis of an assertion of personal privileges by the officers would prevent the trustee from investigating possible misconduct by the officers and permit the officers to "use the privilege as a shield against the trustee's efforts." Id. at 353, 105 S.Ct. at 1994, 85 L.Ed.2d 372.
 
 
 33
 The test adopted by the district court does not invade the personal privilege of the officers because they do not have an attorney-client privilege with regard to communications made in their role as corporate officials. See In re Grand Jury Proceedings, Detroit, Michigan, 434 F.Supp. 648 (E.D.Mich.1977), aff'd 570 F.2d 562 (6th Cir.1978); In re Grand Jury Subpoena Duces Tecum, 391 F.Supp. 1029 (S.D.N.Y.1975). Moreover, the district court has not precluded the possibility that appellants may assert their personal privilege as to matters not related to their role as officers of the corporation. First, the order directs that no questions could be asked regarding the need for separate representation. Second, the court allowed for the possibility that appellants could demonstrate that some of the communications after March 31st were personal and protected communications relating to the principals' personal liabilities, except insofar as they were related to their role as corporate officers. Finally, the district court held that it would review in camera any communication over which there was a question whether it was personal or corporate in nature.[2]
 
 
 34
 In light of the foregoing analysis, we find that that the district court's order properly defined the extent to which the principals were entitled to bar discovery of communications with counsel based on their individual attorney-client privileges.[3]
 
 B.
 
 35
 We turn now to Bevill's contention that the district court erred in holding that the communications were not protected by the joint defense privilege. In particular, Bevill asserts that the district court erred in finding that he did not bear his burden of establishing that a joint defense existed.
 
 
 36
 The joint defense privilege protects communications between an individual and an attorney for another when the communications are "part of an on-going and joint effort to set up a common defense strategy." Eisenberg v. Gagnon, 766 F.2d 770, 787 (3d Cir.), cert. denied sub nom., Weinstein v. Eisenberg, --- U.S. ----, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985). In order to establish the existence of a joint defense privilege, the party asserting the privilege must show that (1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived. In re Grand Jury Subpoena Duces Tecum Dated November 16, 1974, 406 F.Supp. 381 (S.D.N.Y.1975).
 
 
 37
 In this case, Bevill produced no evidence that the parties had agreed to pursue a joint defense strategy. Bevill, however, apparently contends that he is relieved from his burden of proof because he has asserted his fifth amendment privilege and that the district court's holding placed an impermissible burden on the assertion of his constitutional right. We find this position untenable. A party asserting a privilege bears the burden of proving the applicability of the privilege. See, e.g., Grand Jury Empanelled February 14, 1978, 603 F.2d 469, 474 (3d Cir.1979). The district court's decision simply held that by refusing to answer any questions or submit any evidence, Bevill did not bear his burden of proof. A party cannot invoke a privilege by remaining silent.
 
 
 38
 Therefore, we conclude that the district court was correct in holding that Bevill has not sustained his burden of proof insofar as the joint defense privilege is concerned.
 
 III.
 
 39
 The order of the district court, therefore, will be affirmed.
 
 
 
 [1]
 That the principals of the corporations never retained Hellring, Lindeman as their personal counsel has no effect on the issues in this case. The attorney-client privilege protects conversations between prospective clients and counsel as well as communications with retained counsel. See e.g., Baird v. Koerner, 279 F.2d 623, 635 (9th Cir.1960)
 
 
 [2]
 Appellants apparently object to the in camera review of any materials on the ground that such review violates their attorney-client privilege. We reject such a contention because in camera review is frequently the only way to resolve whether in fact the privilege asserted applies. See, e.g., United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)
 
 
 [3]
 Appellants claim that the district court's holding that the communications prior to March 31st were privileged is inconsistent with its decision to order disclosure of the communications that occurred after that date. To the extent that the two orders are inconsistent, we simply note our preference for the latter holding