### UNITED STATES of America

v.

### Herbert K. FISHER, Herman Bloom.

### Crim. A. No. 86–00451–18, 19.

United States District Court,
E.D. Pennsylvania.

June 29, 1988.

See also 692 F.Supp. 495.

Richard L. Scheff, Asst. U.S. Atty., Philadelphia, Pa., for Government.

William J. Winning, Curran, Winning & Sioravanti, Media, Pa., for defendant Herbert Fisher.

Joel Slomski, Zigiazomo & Slomski, Philadelphia, Pa., for defendant Herman Bloom.

### ORDER

KATZ, District Judge.

AND NOW, this 29th day of June, 1988, after a hearing and upon consideration of defendants Herman Bloom and Herbert K. Fisher's Motion and Renewed Motion to Suppress Certain Tape Recorded Conversations and the government's responses thereto, it is hereby ORDERED that defendants' motions are DENIED.[1] The government may introduce into evidence those portions of the tape recordings of the October 16, 1985, November 21, 1985, December 3, 1985, December 17, 1985, December 30, 1985 and January 27, 1986 conversations which they have not previously agreed to exclude.[2]

Defendants seek to suppress seven conversations intercepted by the government on the grounds that the tape recorded conversations involve confidential attorney-client communications protected by the attorney-client privilege, and that the interception of these privileged communications reflects a failure on the part of the government to minimize electronic surveillance in accordance with 18 U.S.C. § 2510, et seq.

### DISCUSSION

The attorney-client privilege "exists to foster disclosure and communication between the attorney and the client." *In re Grand Jury Investigation*, 599 F.2d 1224, 1235 (3d Cir.1979). The privilege does, however, stand in derogation of the search for truth and must therefore be "strictly confined within the narrowest possible limits consistent with the logic of its principle." *In re Grand Jury Investigation* at 1235 (quoting 8 Wigmore on Evidence § 2291 at 545 (McNaughten rev. 1961)); *see also In The Matter of Walsh*, 623 F.2d 489, 493 (7th Cir.1980), *cert. denied*, 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980) (citing *United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974)). Indeed, the party asserting the privilege bears the bur-

---

1. The points for denoting conversations are derived from Exhibit 1 of the government's Memorandum in Support of Government's Answer to Defendants' Motion to Suppress Certain Tape Recorded Conversations. As neither the defendants nor the government have introduced into evidence the transcripts of the October 16, 1985, December 30, 1985 and January 27, 1986 conversations, and as these tape recordings were not played at the earlier trial of the thirteen Roofers Union defendants; the court has relied upon the summaries of the conversations submitted by the government, the accuracy of which the defendants have not challenged.

2. The government informed the court at the hearing that it will not seek to introduce into evidence at trial those portions of the conversations to which the defendants object, which involve discussion of Robert Medina and his arrest.

den of proving the existence of each element of the privilege. *In the Matter of Bevill, Bresler & Schulman Asset Management Corp.*, 805 F.2d 120, 126 (3d Cir.1986); *United States v. Calabria*, 614 F.Supp. 187, 192 (E.D.Pa.1985). The attorney-client privilege applies when:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358–59 (D.Mass. 1950). Essentially, the privilege exists if a client makes a communication in confidence to his attorney for the purpose of securing legal advice. *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed. 2d 39 (1976).

### The Intercepted Conversations

The seven conversations at issue took place on October 16, 1985 (2 conversations), November 21, 1985, December 3, 1985, December 17, 1985, December 30, 1985 and January 27, 1986. I will address each of the conversations in turn.

### October 16, 1985

On October 16, 1985 defendant Fisher, Robert Crosley, and Mark Osborn were recorded in Roofers Union headquarters. At that time four subjects were discussed: (1) charges against Robert Medina and an insurance claim for the "stolen" Medina automobile; (2) the possibility of disqualification from union office of individuals convicted of certain crimes; (3) a criminal case pending against Robert Crosley's nephew; and (4) motor vehicle accident cases in general.

No part of this October 16, 1985 conversation will be suppressed on the grounds of attorney-client privilege. Critical to any assertion of the privilege is, of course, the existence of an attorney-client relationship. *Barr Marine Products Co., Inc. v. Borg–Warner Corp.*, 84 F.R.D. 631 (E.D.Pa.1979). There was at the time of this conversation no attorney-client relationship in existence between defendant Fisher and either Robert Crosley or Mark Osborn. Though an attorney-client relationship may exist between an attorney for an unincorporated association and the association and each of its members, *Westinghouse Electric Corp. v. Kerr–McGee Corp.*, 580 F.2d 1311, 1318 (7th Cir.1978), cert. denied, 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978); *Skloff v. Bickley*, 85–5555, slip op. (E.D.Pa.1986) (Broderick, J.) [available on WESTLAW, 1986 WL 14999] (available on LEXIS), defendant Fisher was not the attorney for the Roofers Union, an unincorporated association of which Mr. Crosley and Mr. Osborn were members, but was instead merely an attorney for whose services Mr. Crosley and Mr. Osborn were eligible to avail themselves as union members through a prepaid legal services fund. As Mr. Winning's affidavit asserts: "[Both] individuals were members of the Prepaid Legal Services Fund and eligible to receive advice and assistance from the law firm of Bloom, Ocks and Fisher." *May 12, 1987 Affidavit of William J. Winning, Esq.* at ¶ 7. An attorney-client relationship is not necessarily dependent upon the payment of fees or upon the execution of a formal contract. *Westinghouse Electric*, 580 F.2d at 1317. Indeed, the fact that a third-party pays the fee for the lawyer's services does not necessarily mean that there is no attorney-client relationship. *See Fort Meyers Seafood Packers, Inc. v. Steptoe and Johnson*, 381 F.2d 261, 262 (D.C.Cir.1967), cert. denied, 390 U.S. 946, 88 S.Ct. 1033, 19 L.Ed.2d 1135 (1968). In this case, however, it is neither the absence of a retainer nor the payment of legal fees by the union that negates the presence of an attorney-client relationship. Rather, it is the difference between two individuals who hypothetically may someday be able to

employ defendant Fisher as their attorney and the existence of an attorney-client relationship on the date in question. While the privilege protects a prospective client's preliminary consultation with an attorney regarding the possibility of representation, it stretches the rationale of the attorney-client privilege too far to assert that merely because at some time in the future Mr. Crosley or Mr. Osborn may call upon defendant Fisher for legal services, an attorney-client relationship exists perpetually. *See Bevill, Bresill & Schulman*, 805 F.2d at 124 n. 1. The conclusory affidavits of counsel are unpersuasive and the defendants have simply not met their burden of establishing such a relationship.

■ Even if Mr. Crosley and Mr. Osborn, as eligible members of the prepaid legal fund, were clients of defendant Fisher on October 16, 1985, the nature of the communications at issue do not warrant the protection of the privilege. Defendant Fisher concedes, and I agree, that points (3) and (4) are not privileged communications. In addition, the government has, by agreement with the defendants, agreed to exclude point (1) (a discussion of Robert Medina's arrest). I must decide, therefore, only whether point (2) (a discussion of the ramifications of a conviction with respect to holding union office) is in fact privileged. *See July 17, 1987 Affidavit of William J. Winning, Esq.* at 4. At the heart of the attorney-client privilege is the requirement that the primary purpose of the communication at issue be to secure some legal advice or the provision of some legal services. *Barr Marine*, 84 F.R.D. at 635. In order for the attorney-client privilege to apply, the communication must be made by the client to an attorney who is acting as an attorney and not, for example, as a friend or business advisor. *Barr Marine*, 84 F.R.D. at 634; *Walsh*, 623 F.2d at 494. The discussion between Messrs. Crosley and Osborn and defendant Fisher involved no rendering of legal advice by Mr. Fisher. Instead, defendant Fisher was acting merely as a friend or acquaintance rather than as a lawyer. This communication, consisting of general information about union policies, is not the sort of legal communication which justifies the application of the attorney-client privilege. *See Modern Woodmen of America v. Watkins*, 132 F.2d 352, 354 (5th Cir.1942). Neither Mr. Crosley nor Mr. Osborn consulted defendant Fisher as an individual with past, current, or anticipated legal difficulties, and thus this communication is not entitled to the protection of the attorney-client privilege.

Defendant Fisher also asserts that the attorney-client privilege warrants suppression of the October 16, 1985 telephone conversation between defendant Fisher and Mr. Stephen Traitz, Jr., at which time Mr. Fisher informed Mr. Traitz of Mr. Medina's arrest. As the government has agreed not to introduce this conversation at trial, I need not rule on the applicability of the attorney-client privilege to this conversation.

*November 21, 1985*

Defendants Bloom and Fisher each claim that a tape recording made on November 21, 1985 in the Roofers Union office and involving both defendants Fisher and Bloom as well as Mr. Stephen Traitz, Jr. contains privileged communications which ought properly to be suppressed. This conversation involved: (1) a review of the progress of the Medina case; (2) a general discussion of Philadelphia politics and politicians; (3) a discussion of the quality of the lawyers in defendants' law firm and of the possibility of an increased fee or caseload from the union to the law firm; and (4) a discussion of the terms of a ten percent (10%) kickback from the union to the law firm. Defendants acknowledge that points (2), (4) and the portion of (3) involving increasing the fee or the caseload of Bloom, Ocks and Fisher are not privileged communications. *Winning July 17, 1987 Affidavit* at 5; *July 14, 1987 Affidavit of Joel H. Slomsky, Esq.* at 2–3. I agree. In addition, the government has agreed to redact point (1). Only the admissibility of that portion of point (3) which involves the discussion of the quality of lawyers in the firm of Bloom, Ocks and Fisher is contested. Stephen Traitz, Jr. was not a client of defendants in this situation, nor was he seeking any legal advice; therefore, this

conversation is not protected by the attorney-client privilege.

█ As an individual officer of the union, Mr. Traitz was eligible to receive the legal services of defendants Fisher and Bloom under the prepaid legal services fund. For the same reasons that neither Mr. Crosley nor Mr. Osborn are *ad infitum* clients of Bloom, Ocks and Fisher, neither is Stephen Traitz, Jr. Defendants also allege, however, that as the business manager of the Roofers Union and as the trustee of the prepaid legal fund, Stephen Traitz, Jr. was a client of Bloom, Ocks and Fisher at all times. Defendants' reasoning is incorrect. Defendants Fisher and Bloom were not the lawyers for the Roofers Union, but rather were attorneys whose services could at some time be provided to Roofers Union members through a prepaid legal fund. The fact, therefore, that Stephen Traitz, Jr. was the business manager of the Roofers Union is irrelevant here.[3] Similarly, the fact that Stephen Traitz, Jr. was the trustee of the prepaid legal fund is also of no consequence. As the trustee of the prepaid legal fund, Stephen Traitz, Jr. was not the client of Mr. Fisher or Mr. Bloom with respect to administration of the fund. *See United States v. Evans,* 796 F.2d 264 (9th Cir.1986) (per curiam). In addition, this type of general discussion does not reflect any intent on the part of Stephen Traitz, Jr. to have a confidential communication with the attorneys so as to secure legal advice. Rather, this conversation covered merely business matters of the prepaid legal fund.

*December 3, 1985*

█ Defendants also seek to suppress portions of a December 3, 1985 conversation between Mr. Stephen Traitz, Jr. and defendant Fisher. This conversation contained: (1) the receipt of $5,000 by Stephen Traitz, Jr. from Fisher; (2) Traitz and Fisher discussing a list of judges who will receive money from the Roofers Union; (3) a

discussion of the fee arrangement between the Roofers Union and Bloom, Ocks and Fisher and the structure of the prepaid legal services fund; (4) a recitation of the facts of the Medina case; (5) defendant Fisher telling Stephen Traitz, Jr. that Medina's action may constitute mail fraud; (6) Stephen Traitz, Jr. requesting kickback money from defendant Fisher in time for Christmas; and (7) a general discussion of work and of the union. Clearly, points (1) and (2) are not privileged, as defendant Fisher concedes. *Winning July 17, 1987 Affidavit* at 5. Defendant Fisher alleges that points (4) and (5) are privileged, but makes no mention of points (3), (6) and (7). *Winning July 17, 1987 Affidavit* at 5–6. I assume from his silence that he concedes that these conversations (points (3), (6) and (7)) are not privileged, and I agree that the discussion of the fee structure of the prepaid legal fund, Traitz's plea for kickback money before Christmas, and the general discussion of the union are not privileged communications. Points (4) and (5) will not be introduced by agreement of the government.

*December 17, 1985*

█ No part of the December 17, 1985 conversation between Stephen Traitz, Jr. and defendant Fisher is privileged. (Mr. Medina is present only briefly.) This conversation involved: (1) a discussion about increasing the fee of Bloom, Ocks and Fisher; (2) a short discussion of the kickback scheme; (3) Stephen Traitz, Jr. explaining how and when judges are paid; (4) a discussion of Traitz's farm; (5) a conversation about the Medina case; and (6) a discussion of the union Christmas party and about bill paying in general. Defendant Fisher acknowledges that points (1), (2), (3), (4) and (6) are not privileged, and I agree. *Winning July 17, 1987 Affidavit* at 6–7. In addition, point (5) will not be introduced at trial by agreement of the government.

---

**3.** I agree with the government that the defendants' reliance on *Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) is misplaced. *Upjohn* deals only with the applicability of the attorney-client privilege of a corporation and its lawyers to certain of the corporation's employees.

*December 30, 1985*

■ Defendant Fisher also seeks to suppress on the grounds of privilege the December 30, 1985 phone conversation of Stephen Traitz, Jr. and defendant Fisher, in which only Mr. Traitz has been recorded. This conversation involves a discussion of the kickback scheme and of the contingency fee arrangement between the law firm and the union. In his affidavit, Mr. Winning states that in this conversation Stephen Traitz, Jr. is "not expressly seeking legal advice within the strict meaning of the term." *Winning July 17, 1987 Affidavit* at 7. I agree, and this conversation is therefore not privileged.

*January 27, 1986*

■ The final conversation which defendant Fisher alleges to be privileged occurred on January 27, 1986. Both defendant Fisher and Stephen Traitz, Jr. were present. During the meeting (1) defendant Fisher calls Bernard Katz, and defendant Fisher and Stephen Traitz, Jr. discuss with Mr. Katz (2) the Medina case; and (3) the union in general. As defendant Fisher concedes that point (1) is not privileged, it will not be suppressed. *Winning July 17, 1987 Affidavit* at 7. As defendant makes no mention of point (3) as privileged, I thereby assume that he is acknowledging that it is not privileged. *Winning July 17, 1987 Affidavit* at 7–8. I agree, as it does not involve any attempt to obtain legal services, representation in a legal proceeding, or a legal opinion. Point (2) will be redacted by the government.

*Waiver*

At this time the government intends to introduce into evidence only those tapes that have already been played at the trial of the thirteen roofers. These are the November 21, 1985, the December 3, 1985 and the December 17, 1985 recordings. All portions of these tapes which the government intends to play at the trial of these defendants were introduced without objection at

the previous trial. I have heard them and they are incorporated into this record.

■ It is well established that the attorney-client privilege belongs to the client. 1 G. Weissenberger, *Federal Evidence* § 501.5 (1987). The attorney may, however, assert the privilege on his client's behalf, *Schwimmer v. United States,* 232 F.2d 855, 863 (8th Cir.1956), *cert. denied,* 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956), but only the client may waive it. 8 Wigmore § 2327 at 635. A client may waive the privilege either expressly, or implicitly by conduct that extinguishes one of the necessary elements of the privilege. *Hollins v. Powell,* 773 F.2d 191, 196 (8th Cir.1985), *cert. denied,* 475 U.S. 1119, 106 S.Ct. 1635, 90 L.Ed.2d 181 (1986); *In re Grand Jury Proceedings,* 73 F.R.D. 647, 652 (M.D.Fla.1977). Any voluntary disclosure by the holder of the privilege is inconsistent with the confidential nature of the relationship, and thereby waives the privilege. *In re Subpoena Duces Tecum,* 738 F.2d 1367, 1369 (D.C.Cir.1984). Indeed, in determining the confidentiality of any communication it is the intent of the client that controls. Waiver of the attorney-client privilege will be implied when a client has testified concerning portions of an attorney-client communication. *Hollins,* 773 F.2d at 196; *Sedco International, S.A. v. Cory,* 683 F.2d 1201, 1206 (8th Cir.1982), *cert. denied,* 459 U.S. 1017, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982). In *Hollins, supra,* a failure to object to questioning that may have implicated the privilege resulted in a waiver of the attorney-client privilege. *Hollins,* 773 F.2d at 197. As none of the potential "clients" objected at their trial to the admission of these tape recordings, the tape recordings have thereby lost their confidential character. The November 21, 1985, December 3, 1985, and December 17, 1985 tapes, therefore, will not be suppressed on the grounds of privilege.[4] Even if they are deemed to be privileged attorney-client communications, their character as privileged communications was voluntar-

---

**4.** As stated above, certain parts of these conversations dealing with Robert Medina and his arrest will be redacted by the government.

ily waived, and they are therefore no longer privileged.

▆▆▆▆ In addition, defendants argue that the government agents who surveilled these defendants heard these conversations, knew them to be privileged attorney-client conversations, yet failed to interrupt their electronic surveillance so as to minimize the interception of any further privileged communication. The defendants have failed to meet their burden of establishing the privileged nature of the communications at issue here, and have no valid claim for suppression for failure of the government to minimize under 18 U.S.C. § 2518(5). *See United States v. Traitz, Jr.,* 85–2012, slip op. (E.D.Pa. June 25, 1987) (Giles, J.) (filed under seal). Likewise, I agree with Judge Giles that the government's failure to identify defendants Fisher and Bloom as interceptees in the November 22, 1985 Interception Order and Application does not require suppression here. *See United States v. Donovan,* 429 U.S. 413, 439, 97 S.Ct. 658, 673, 50 L.Ed.2d 652 (1977); *Traitz, Jr.,* slip op. at 86–88. In addition, I find that there has been no failure by the government to minimize any non-pertinent matters which are not covered by the attorney-client privilege. The recording by the agents of non-criminal conversations on November 21, 1985 was objectively reasonable under the circumstances, and I cannot see how the peripheral matters which were taped prejudice these defendants. *See Scott v. United States,* 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978); *United States v. Cortese,* 568 F.Supp. 119, 124 (M.D.Pa. 1983); *United States v. Geller,* 560 F.Supp. 1309, 1325 (E.D.Pa.1983). As I stated at the hearing, I credit the testimony of Assistant United States Attorney Richard Scheff, and I find that the fact that the FBI agents assigned to the electronic surveillance in this case initialled the last page of the affidavit in support of electronic surveillance of Agent Quinn John Tamm, Jr. signifies that they read the entire package including the order of Judge Giles au-

thorizing the surveillance and the application of the United States. Regardless, the agents were given minimization instructions which contained sufficient information to apprise the agents of the proper procedures to employ while conducting the surveillance, so as to avoid the interception of non-pertinent matters, and a conference was held to explain these instructions to the agents. *Government's Answer to Defendants' Motion for an Evidentiary Hearing,* Exhibits A, B. As there is no evidence of a failure on the part of the agents to appropriately minimize, defendants' most recent Motion for an Evidentiary Hearing Or, In the Alternative, An Order Suppressing Tape–Recorded Conversations is DENIED.[5]

---

5. In addition, I incorporate herein the findings of my bench opinion and Judge Giles' opinion as to the minimization issue.