**Johnnie TASBY, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

No. 74-1199.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 10, 1974.

Decided Oct. 10, 1974.

Certiorari Denied Jan. 20, 1975.
See 95 S.Ct. 811.

John B. Hainen, DeQueen, Ark., for appellant.

Robert E. Johnson, U. S. Atty., Fort Smith, Ark., for appellee.

Before GIBSON, Chief Judge, BRIGHT, Circuit Judge, and SMITH, Senior District Judge *.

GIBSON, Chief Judge.

Johnnie Tasby appeals his jury conviction of making a false material declaration in violation of 18 U.S.C. § 1623.[1] He was sentenced to a term of three years imprisonment to run consecutively to the term he is now serving. This prosecution arises from Tasby's testimony given under oath during two previous court proceedings. In the first proceeding Tasby was convicted of interstate kidnapping. This was affirmed on appeal, Tasby v. United States, 451 F.2d 394 (8th Cir. 1971), cert. denied, 406 U.S. 922, 92 S.Ct. 1787, 32 L.Ed.2d 122 (1972). Subsequently, Tasby brought a petition for post-conviction relief pursuant to 28 U.S.C. § 2255 which was denied after a hearing in the district court. This denial was affirmed on appeal, Tasby v. United States, No. 74–1916 (8th Cir., filed March 14, 1974), cert. denied, 417 U.S. 971, 94 S.Ct. 3176, 41 L.Ed.2d 1142 (1974).

At his original kidnapping trial Tasby testified in his own behalf. This occurred only after a record was made establishing through Tasby's own testimony that his attorney, Mr. Peek, had advised him not to take the stand, had explained to him the possible consequences of taking the stand, and that Tasby still wished to testify.[2]

---

* The Honorable Talbot Smith, United States Senior District Judge, Eastern District of Michigan, sitting by designation.

1. 18 U.S.C. § 1623, enacted Oct. 15, 1970, Pub.L. 91–452, 84 Stat. 932, provides in part:

    False declarations before grand jury or court

    (a) Whoever under oath in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration * * * shall be fined not more than $10,000 or imprisoned not more than five years, or both.

2. The following record regarding Tasby's desire to take the stand was made at the original kidnapping trial.

    Q. [Mr. Peek] : Johnnie, you have requested of me, that I put [you] on the stand to testify in this case, haven't you?

    A. [Tasby] : Yes, I have.

    *    *    *    *    *

    Q. I have told you that you don't have to take the stand. In the event that you do of if you don't, that the Government cannot mention your failure to take the stand to the jury?

    A. Yes, sir.

    Q. And not allude to it in any way?

In the later § 2255 proceeding Tasby claimed the ineffective assistance of counsel. In support of this claim Tasby testified that he did not wish to take the stand at the original trial. Further he stated that Mr. Peek had never advised him not to take the stand, alleging that he was coerced into taking the stand by Mr. Peek's statements that he would get 25 years to life if he did not testify. Since Tasby's testimony in his § 2255 proceeding is crucial to the perjury charge, it is set forth in considerable detail in the margin, as is Mr. Peek's testimony.[3]

We turn to Tasby's assignments of error. He alleges that: (1) the indictment was insufficient; (2) the court

A. (Shakes head in the affirmative).

Q. I have let you, after having given you my opinion and impressions that you should not take the stand without more than what we have, it is still your desire, you have expressed a desire to me that you still want to take the stand?

A. Yes, I do.

Q. You realize that you will be subject to cross examination by the Government's attorneys?

A. Yes, I do.

Q. I have advised you that there is a good possibility that they may bring out more from you than what has been introduced in evidence so far?

A. Yes, sir.

Q. Now, Johnnie, would you tell the Court at this time, whether or not you desire still to take the stand and to give your testimony in this cause.

A. Yes, I do.

*     *     *     *     *

THE COURT: So the Record will be clear, Mr. Peek as attorney for Mr. Tasby, has consulted with him and has advised him that in his best judgment, it would be better for him not to testify, yet Mr. Tasby, after having been duly warned as a Defendant in this case, elected to testify, as he has a right to do.

3. Q. [Hainen]: Now, even after disclosing these matters when and what brought you to the point of testifying about it?

A. [Tasby]: Well, as far as I can remember when Mr. Peek, well, when Mr. Peek approached me with the statements he had rumors and the rumors that he had that he came to me with well, like somewhat put me on a defensive and he said "well, I was not leveling with him, I was not telling him everything and he could not help me if I did not, you know, if I did not give him more help"; so from this conversation I told my attorney I would talk truthfully and confidentially with him but I did not have any desires of taking it any further because of certain fears and he made such promises as he would have the Marshal to stop the deputy sheriff from Miller County transporting us and shackling us together and only if I would, you know, consider giving more to go on if I would tell him everything and the truth and consider using it as the defense; like at this time I told the attorney that I had more than myself to think about. I had a family here and I knew the hostile community that I was in and I had co-defendants also which had been connected with the situation and they had families and had to think about them but the attorney told me unless I would tell him everything and consider taking the stand on the defense we would all be up to twenty-five to life. And at this time me being unaware of the law and the way of it I considered it, I beared it in mind but I still did not tell Mr. Peek I wanted to take the stand or I wanted him to reveal the way I had talked to him about it and he promised me that he would not, like he specifically said he would wait until after I talked to my co-defendants and once I talked to them they decided about it and I was so worried about it as far as the danger and what-have-you that I mentioned to him.

*     *     *     *     *

Q. Now, at that time had you stated that you wanted to testify?

A. I did not want to testify and I told Mr. Peek plainly that I did not want to testify but he promised me that it would be for my best and if not that I would be subjected to twenty-five to life because he had talked to the United States Attorney personally and he said that is what he would ask for. And of course me being unaware of any of the law at this time this made a real big impression on me; that should be—you know, that I should tell the truth about it—about the outcome. Mr. Peek he never showed any implication, never once mentioned to me that I should not. All indications and all the advice that I got was this was the right thing, this was the only thing, and each time that it seemed like that I did not want to go through with it, he kept mentioning the twenty-five to life and he kept saying, in one particular incident in the trial, I guess it was after they got to talking to Mr. Taylor, to find out what he had put together in a particular recess in the Judge's Chambers or the adjoining room here, he asked me if I was ready and I told Mr. Peek, I said "I am ready, Mr.

improperly commented upon the evidence; (3) the prosecutor improperly commented upon his failure to testify; (4) that Mr. Peek was allowed to testify in violation of the attorney-client relationship; (5) the court erred in determining materiality; (6) the court imposed an excessive sentence; and (7) the cumulative effects of the prior errors denied him a fair trial.

■ The indictment in this case adequately sets forth the elements of the offense charged. That is all that is required by Fed.R.Crim.P. 7(c). As stated in United States v. Debrow, 346 U.S. 374, 378, 74 S.Ct. 113, 116, 98 L.Ed. 92 (1953):

The sufficiency of the indictment is not a question of whether it could have been made more definite and certain. If the defendants wanted more definite information * * * they could have obtained it by requesting a

bill of particulars. Rule 7(f), F.R. Crim.Proc.

The date of the allegedly false testimony is explicitly set forth and reference is made therein to the original kidnapping trial, but the date of that trial is not stated. The fact that the indictment does not set forth the time and place of the original trial does not render the indictment defective. There was only one original kidnapping trial. Tasby was a major participant. He knew the date and further could confirm it if he so desired. This issue is patently frivolous. It relates only to court records and only concerns court proceedings in which the defendant was a party. This information, if really necessary to prepare a defense, could have been sought by a motion for bill of particulars.

■ We have reviewed the statements alleged by Tasby to be an improper comment by the court on the evidence

Peek, but I am not sure, you know, I am worried about another charge". So at this time Mr. Patton himself made the statement "you should not worry about another charge because there is not another charge in the statutes that is any worse than the charge that we already had." So, this right there I made my last decision that I would go all the way with it but never once or twice or any at all did either of the other attorneys ever approach me about not taking the stand nor anything other than taking it.

* * * * *

Q. Now, are you telling me that nobody had suggested that you should not testify?

A. Not once, Mr. Attorney * * *.

Mr. Peek testified concerning Tasby's taking the stand as follows:

Q. [Hainen]: Getting back to Mr. Tasby, at whose request was it that Mr. Tasby testified? Did you request it, or did he request it?

A. [Peek]: No, sir, I advised him not to testify, as did the other lawyers in this case.

Q. You mean the other lawyers representing the other defendants?

A. Yes, sir.

* * * * *

Q. And on that advice did Mr. Tasby accept the advice of you and the other lawyers?

A. No, sir.

Q. After having heard Mrs. Vickers' testimony he requested to testify?

A. Yes, sir.

Q. I will ask you, after he asked to testify, and prior to the time he testified, didn't the Court advise him of his right of testifying, and the right of cross examination if he did testify?

A. Yes, sir.

Q. Was he fully apprised of all of his rights?

A. Yes, sir.

At some point in the trial after the Government had presented its case, I remember one time in particular just before Johnnie Tasby testified, we were in the room to the immediate left here, and we all talked to him.

Q. That is, all the lawyers?

A. Yes, sir. And requested that he not testify because we felt we had a chance for some error if he would not take the stand. Nevertheless, he stated that he was going to take the stand, and he did. Prior to the doing of that I approached the bench and asked, made known to the Court, and the Court then excused the jury, and the jury left the room, at which time again he was admonished by the Court, and he still chose to testify.

Q. And did testify?

A. Yes, sir.

Q. And he did take the stand?

A. Yes, sir.

and those of the prosecutor alleged to be improper comment on his failure to testify and do not find them objectionable. The judge's statement concerning a formal witness to prove an unassailed court record was not a comment on the credibility of the witness. The prosecutor's comment was to some extent invited, but was really collateral to the issue in this case and was not a comment on Tasby's failure to take the stand in the perjury trial. If either could be considered error, we are satisfied that this error was harmless beyond a reasonable doubt. Irrefragably Tasby is nailed by his own testimony and the written record of judicial proceedings. There are no relevant disputed factual issues except Tasby's incredible contentions.

■■■ We find no violation of the attorney-client privilege in the facts of this case. It has long been the law that a client may waive protection of the privilege, either expressly or impliedly. Blackburn v. Crawfords, 70 U.S. (3 Wall.) 175, 194, 18 L.Ed. 186 (1865). One of the circumstances which may support a conclusion of a waiver is an attack by the client upon his attorney's conduct which calls into question the substance of their communications. A client has a privilege to keep his conversations with his attorney confidential, but that privilege is waived when a client attacks his attorney's competence in giving legal advice, puts in issue that advice and ascribes a course of action to his attorney that raises the specter of ineffectiveness or incompetence. Here, the confidentiality of the attorney-client relationship was breached by Tasby. Surely a client is not free to make various allegations of misconduct and incompetence while the attorney's lips are sealed by invocation of the attorney-client privilege. Such an incongruous result would be inconsistent with the object and purpose of the attorney-client privilege and a patent perversion of the rule. When a client calls into public question the competence of his attorney, the privilege is waived. Laughner v. United States, 373 F.2d 326 (5th Cir. 1967); Sherman v. United States, 261

F.Supp. 522, 531 (D.Haw.), aff'd 383 F. 2d 837 (9th Cir. 1966); see Pruitt v. Peyton, 243 F.Supp. 907 (E.D.Va.1965); United States v. Butler, 167 F.Supp. 102 (E.D.Va. 1957), aff'd 260 F.2d 574 (4th Cir. 1958).

■■■ Tasby at the § 2255 hearing attacked the representation of his attorney, thereby putting into question the substance of his communications with Tasby. We think this establishes Tasby's waiver of the privilege. In the present proceeding, Mr. Peek's testimony was relevant and material as to the truth or falsity of Tasby's prior declarations and the trial court was not in error in allowing Mr. Peek to testify.

The foundation of our adversary system is the search to elicit the truth from witnesses concerning factual occurrences. False testimony is anaethema to the system and is not to be consciously and knowingly countenanced. When incredibility and doubt attend the testimony of any witness it clouds the picture, but perjury prevents the ascertainment of the actual facts. We regard perjury, or the making of false material declarations, as a serious offense and as an assault upon the cornerstone of our judicial system.

While courts are created to decide controversies amongst contending parties with conflicting claims, their task is made immeasurably more difficult, considering the limited judicial resources available, when further burdened with knowingly perjured claims.

We are not unmindful that prosecution of petitioner for making false material declarations in his § 2255 proceeding is a matter which could have ramifications upon the increasing flood of prisoner petitions. We would emphasize that this case is not concerned with cutting off the flow of bona fide claims respecting constitutional and legal rights. We are concerned only with the making of false and perjurious claims, and where such claims are knowingly made, appropriate action should be taken by the proper authorities. Our review of the record in this case convinces us that

a false claim was made here and prosecution was properly instituted.

That the testimony Tasby gave at the § 2255 hearing regarding his attorney's advice to testify was material requires no discussion. His petition alleged the ineffective assistance of counsel and his attorney's advice regarding whether he should testify or not was material to the resolution of that issue. It was not error for the court to instruct the jury as to its materiality. The materiality of a false declaration in a § 1623 prosecution is a question of law for the trial court to determine. United States v. Koonce, 485 F.2d 374 (8th Cir. 1973).

The sentence of three years imposed by the court was within the statutory limit and thus cannot be said to be excessive. The imposition of consecutive sentences is within the power of the sentencing judge. Thus, the argument that Tasby's three year sentence was excessive lacks merit. Having found no errors in the conduct of the trial, it is obvious that the claim regarding the cumulative effect of the alleged errors must fail.

Judgment of conviction affirmed.