**In re Denise J. EDDY, Debtor.**

**No. 01–46141.**

United States Bankruptcy Court,
D. Massachusetts.

Feb. 13, 2004.

Carl Aframe, Aframe, Barnhill & Von Timroth, PA, Worcester, MA, for Debtor.

Mark W. Powers, Inc., Bowditch & Dewey, Worcester, MA, for International Enterprises.

John A. Burdick, Jr., Burdick & DiLeo, P.C., Worcester, MA, for Chapter 7 Trustee.

Stephen E. Meunier, Office of US. Trustee, Worcester, MA, U.S. Trustee.

## MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court is a "Joint Motion for Entry of an Order: (1) That the Chapter 7 Trustee Holds and is Empowered to Waive The Debtor's Attorney–Client Privilege, and (2) To Compel Testimony From Attorney Walter J. Lupan" (the "Motion to Compel"), filed jointly by John A. Burdick, Jr., the Chapter 7 Trustee (the "Trustee") of Denise J. Eddy (the "Debtor"), and her estate's largest creditor, International Enterprises, Inc. ("IEI"). The motion seeks deposition testimony from two attorneys who previously represented the Debtor during the pendency of her now converted Chapter 11 bankruptcy case.[1] The issues before the Court are: (1) the applicability of the attorney-client privilege, and (2) the ability of a Chapter 7 trustee to waive the

---

1. As discussed *infra* Part II, the original motion sought information from only one attorney. Subsequent memoranda in support indicate that the Trustee and IEI actually seek testimony from two separate attorneys who previously represented the Debtor.

attorney-client privilege previously held by an individual Chapter 11 debtor.

## I. FACTS AND TRAVEL OF THE CASE

The Debtor was the founder and principal of CAE Marketing, a distributor of luggage and apparel and located in Framingham, Massachusetts. IEI holds claims against the Debtor primarily based upon three loans made to the Debtor during the year 2000. When IEI filed suit against the Debtor in the Ohio Court of Common Pleas, the Debtor consulted her local Massachusetts counsel, Attorney Walter Lupan of the law firm of Grassia, Murphy & Whitney, PA. She also retained Attorney George Oryshkewych to represent her in Ohio. Somehow, in June of 2001, IEI obtained a default judgment against the Debtor in the amount of $423,818.00.

On October 4, 2001, the Debtor filed a petition in this Court under Chapter 11 of the Bankruptcy Code. She subsequently filed her bankruptcy schedules. Schedule D sets forth IEI as a secured claim holder in the amount of $423,818.00. Schedule B lists a potential malpractice claim of unknown value against the law firm of Grassia, Murphy & Whitney, PA.[2] Identification of the Debtor's actual counsel in this case has been problematic from the outset. In October of 2001, the Debtor sought to employ the law firm of Hanify & King, and that request was subsequently granted on January 10, 2002. Attorney Lupan later filed a "Notice of Appearance" for the Debtor. However, no application for employment or disclosures ever followed.

In July of 2002, after IEI filed a "Motion For Relief from Automatic Stay (Inventory) and To Convert Case From Chapter 11 to 7," the Debtor and IEI managed to reach a settlement to dispose of all disputes and claims between them. The truce was short-lived, however, and IEI reported to the Court on September 23, 2002 that the Debtor had breached the settlement terms by failing to make a required payment. On October 15, 2002 the Court converted the Debtor's Chapter 11 case to Chapter 7 for cause under 11 U.S.C. § 1112(b)(3);[3] namely, the Debtor's failure to comply with the settlement and to file required reports with the United States trustee. In addition, at the hearing on the question of conversion, the Court was extremely troubled by an allegation made by the United States trustee and IEI that the Debtor had formed a new business entity, post-petition, without seeking Court approval or providing notice to parties in interest. The new business entity was formed on May 7, 2002 and named "Classic Asset Liquidation Management, LLC." The Certificate of Organization had been filed with the Massachusetts Secretary of State's Office by Attorney Lupan.[4] Shortly after learning of the new company's formation, Hanify & King filed an expedited motion to withdraw as counsel to the Debtor.[5]

---

2. The Debtor also listed a malpractice claim against Attorney Oryshkewych. The Trustee and IEI, however, are not seeking waiver of the attorney-client privilege with respect to Attorney Oryshkewych.

3. The Court also granted a "Motion By Creditor International Enterprises, Inc. For Leave to Conduct Examination of Debtor Under Rule 2004 and For Order Directing The Production of Documents."

4. Both the Debtor and Attorney Lupan also concede that Attorney Lupan represented the Debtor in a probate court matter during the pendency of the Chapter 11 case without court authorization.

5. At the October 15, 2002 hearing, Attorney Lizotte for Hanify & King represented that he was unaware of the formation of Classic Asset Liquidation Management, LLC until shortly before it was revealed to the Court. There are no allegations that Attorney Lizotte partic-

Attorney Lupan was ordered to appear before the Court on October 22, 2002 to explain his unauthorized representation of the Debtor. Both Attorney Lupan and the Debtor [6] initially contended that no consideration was paid for Attorney Lupan's services. However, notwithstanding Attorney Lupan's explanation that his legal services to the Debtor were given as a friendly accommodation, the Court found it difficult to comprehend why an attorney would provide valuable legal services to an individual who listed a malpractice claim against the attorney as one of her assets—and not expect any consideration in return. At the conclusion of the October 22, 2002 hearing, Attorney Lupan made the following statement to the Court: "Your Honor, for the record, if Ms. Eddy or the Chapter 7 Trustee waives [the attorney-client] privilege, I'd be happy to explain everything." Although he never otherwise disputed the services he provided, on November 14, 2002, Attorney Lupan sent a letter to the Clerk of the Bankruptcy Court identifying Attorney Lizotte and Attorney Carl Aframe as the Debtor's only previous and/or current counsel.[7]

## II. *POSITIONS OF THE PARTIES*

The Trustee and IEI assert that the attorney-client privilege passed to the Trustee upon his appointment; therefore, they contend that the Trustee is empowered to waive the privilege in accordance with what the Trustee and IEI claim to be the "weight of authority" amongst courts outside of this jurisdiction. The Trustee and IEI further assert that waiver of the privilege will right a previous wrong by providing them information that might

have already been obtained had Attorney Lupan properly filed an application for employment with the Court. In support of this argument, the Trustee and IEI highlight the suspicious circumstances under which Attorney Lupan provided legal services for the Debtor.

In their Motion to Compel, the Trustee and IEI seek disclosure of communications between the Debtor and Attorney Lupan related to: (1) the Debtor's retention of Attorney Lupan, (2) the Debtor's malpractice claim against Attorney Lupan, and (3) any compensation or inducement offered by the Debtor to Attorney Lupan. In the proposed order attached to their memorandum in support of the Motion to Compel, however, they suggest that the Court should rule that: "The Trustee holds, and is empowered to waive, the Debtor's attorney-client privilege with respect to communications relating to: (A) the administration of the Debtor's bankruptcy estate, (B) property of the Debtor's bankruptcy estate within the meaning of Section 541(a), and (C) any property of the Debtor or any entity in which the Debtor claims a legal or beneficial interest that is potentially recoverable by the Debtor's estate." In its reply to the Debtor's opposition to the Motion to Compel, IEI further states that it "may depose Attorney Andrew Lizotte [of] Hanify & King concerning circumstances surrounding the Debtor's formation of Classic Asset Liquidation Management, LLC."

The Debtor complains that the waivers sought are overly broad. The Debtor fears that all other areas of inquiry will be subjected to the Trustee's waiver, most

---

ipated in the new company's formation or in any other improper conduct.

**6.** The Debtor's views are taken from her Rule 2004 examination commenced on February 21, 2003.

**7.** Attorney Aframe has most recently appeared for the Debtor.

notably, communications that relate to IEI's adversary proceeding against the Debtor seeking a determination of nondischargeability pursuant to 11 U.S.C. § 523(a) with respect to IEI's claims.[8]

## III. DISCUSSION

### A. The Existence of the Attorney–Client Privilege

#### 1. The Attorney–Client Privilege in General

■ The attorney-client privilege should not be taken lightly. The privilege serves the purpose of promoting "full and frank communications." *Upjohn v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). A client who fears that his or her attorney may disclose damaging information is less likely to be fully forthcoming. *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); 8 J. Wigmore, *Evidence,* § 2292 (McNaughton Rev.1961). The Supreme Court noted over 20 years ago that "sound legal advice .. depends upon the lawyer's being fully informed by the client." *Upjohn,* 449 U.S. at 389, 101 S.Ct. 677. The privilege, however, is not meant to serve as an all-purpose shield. Since the attorney-client privilege may obstruct the search for truth, it should be strictly construed and applied only where necessary to ensure fully informed legal advice. *Fisher,* 425 U.S. at 403, 96 S.Ct. 1569; *Upjohn,* 449 U.S. at 389, 101 S.Ct. 677; *Weil v. Investment/Indicators, Research and Management, Inc.,* 647 F.2d 18, 24 (9th Cir.1981); *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 862 (D.C.Cir.1980); *In re French,* 162 B.R. 541, 545–46 (Bankr.D.S.D.1994) (citing to *Trammel v. United States,* 445 U.S. 40, 47–50, 100 S.Ct. 906, 63 L.Ed.2d 186

(1980)); Edna Selan Epstein, *The Attorney–Client Privilege and the Work–Product Doctrine* 12–14 (A.B.A.1997).

#### 2. The Attorney–Client Privilege in Bankruptcy Cases

■ In the bankruptcy context, the right to assert the attorney-client privilege is narrowed. In exchange for an automatic stay of creditor collection activity and potential discharge of certain debt, debtors are obligated to disclose all of their assets and liabilities. *U.S. v. White,* 950 F.2d 426, 430 (7th Cir.1991); *In re French,* 162 B.R. 541, 548 (Bankr.D.S.D.1994). These disclosures are necessary to ensure that bankruptcy relief is accorded only to the honest and compliant debtor. *French* 162 B.R. at 548. A debtor has no reasonable expectation that information will be kept confidential if it must be disclosed in bankruptcy filings, *Id.* at 547 (citing to *White* 950 F.2d at 430), and where the Debtor has no reasonable expectation of confidentiality, the attorney-client privilege is unavailable. *See Epstein* at 4 (citing to J. Wigmore, *Evidence* § 2285 at 527). Thus, it has been previously held that the information disclosed to an attorney for the assembly of a bankruptcy petition and schedules does not fall within the scope of the attorney-client privilege. *White* at 430; *French* at 548.

Similarly, the existence of an attorney-client relationship and the attorney compensation arrangement accompanying that relationship have been held to be outside the scope of the attorney-client privilege. *Epstein* at 47; *Chirac v. Reinicker,* 11 Wheat. 280, 24 U.S. 280, 6 L.Ed. 474 (1826) (holding that an attorney may be examined as to the mere fact of the existence between the attorney and the client); *United*

---

8. IEI's complaint to determine the nondischargeability of its claim and to object to the Debtor's discharge was filed on March 12, 2003. Trial has not yet been reached.

*States v. Kingston,* 971 F.2d 481, 491 n. 5 (10th Cir.1992) (holding that testimony regarding identity of a client and the source of legal fees was not a violation of attorney-client privilege); *In re Grand Jury Subpoena Served Upon Doe,* 781 F.2d 238, 247 (2nd Cir.1986) (holding that, absent special circumstances, client identity and fee information are not privileged).

In bankruptcy cases, the statutory mandate to disclose attorney retention and compensation is explicit. A debtor may not enter into an agreement to retain an attorney without court permission. 11 U.S.C. § 329(a) states that:

"Any attorney representing a debtor in a case under this title, or in connection with such title, *whether or not such attorney applies for compensation under this title,* shall file with the court a statement of the compensation paid or agreed to be paid, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, *and the source of such compensation.*"

11 U.S.C. § 329(a) (2003) (emphasis added).

■ Compliance with § 329(a) is mandatory for all debtors regardless of bankruptcy chapter. *See* 11 U.S.C. § 103(a) (2003). Thus, as with information supplied for the petition, debtors have no reasonable expectation of confidentiality with respect to attorney compensation and the source of that compensation. The purpose of § 329(a) is to allow creditors, trustees and the Court to review a debtor's transactions with attorneys. *See In re Meyer,* 50 B.R. 3, 4 (Bankr.S.D.Fla.1985). Supervision is needed to ensure that attorneys receive only what is actually and reasonably compensable for the provided services. *In re Swartout,* 20 B.R. 102, 104–05 (quoting Committee on the Judiciary, House of Representatives, *Report on H.R.*

*2933* (An Act to Amend Subdivision d of Section 60 of the Bankruptcy Act), H.R.Rep. No. 88–99 (1963), *reprinted in* 1990 U.S.C.C.A.N. 637, 638). *Id.* at 102.

■ The Trustee and IEI surmise that the Debtor bartered away her malpractice claim for legal assistance in forming a new company. Trading property of the estate for legal services is a compensation transaction with an attorney, regardless of whether the property transferred is in the form of cash. And the requirement of § 329(a) that the attorney file a statement of compensation, including the source of the compensation, applies "whether or not such attorney applies for compensation." 11 U.S.C. § 329(a) (2003). A concealed, unapproved attorney transaction should be entitled to no more protection than a transaction which is properly disclosed to the court. The communications regarding retention and compensation between Attorney Lupan and the Debtor, conducted during the pendency of the Chapter 11 case, are not subject to the attorney-client privilege.

■ The Trustee and IEI want more, however. They want to examine Attorney Lupan with respect to attorney-client communications surrounding the malpractice claim itself (other than in connection with Attorney Lupan's retention and compensation arrangements) and also generally with respect to other assets of the estate. They say that the attorney-client privilege does not extend to assets which are either property of the estate or the administration thereof. Here they go too far. They can examine the *Debtor* with respect to the disposition of estate assets. But what a slippery slope would result if this Court held that the attorney-client privilege did not apply to any and all issues relating to property of the estate. An individual Chapter 7 debtor would have no such priv-

ilege relating to claimed exemptions or even some discharge issues. A Chapter 13 debtor would have no privilege with respect to the formation of a Chapter 13 plan. And a Chapter 11 debtor would have no privilege with respect to virtually any issue surrounding her/his/its reorganization. Indeed, it would become standard practice for creditors to schedule an examination of debtor's counsel in conjunction with any contested matter. Section 541 of the Bankruptcy Code was intended to provide great breadth to the definition of estate property. It was not intended to vitiate the attorney-client privilege.

B. Waiver by Chapter 7 Trustee of Attorney-client Privilege of Debtor-in-possession in Converted Chapter 11 Case.

 Were this a *corporate* debtor, there would be little question that the Trustee has the power to waive the attorney-client privilege. The Supreme Court has held that the Chapter 7 trustee of a corporate debtor is vested with the powers of management (including the power to waive attorney-client privilege) because the Trustee steps into the shoes of management. *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985). The *Weintraub* Court, however, stopped short of extending its holding to individual debtors, saying: "Our holding today has no bearing on the problem of individual bankruptcy, which we have no reason to address in this case." *Id.* at 356, 105 S.Ct. 1986.

A Chapter 7 trustee's ability to waive the attorney-client privilege of an *individual* debtor is an issue of first impression before this Court. Several courts have struggled with the question. The most numerous, and most recent cases have held that, at least under some circum-stances, a trustee may waive the attorney-client privilege in an individual bankruptcy case. *Foster v. Hill (In re Foster)*, 188 F.3d 1259 (10th Cir.1999) (holding that determination of trustee's control over privilege should be based upon a comparison of the harm to the debtor against the trustee's need for information); *Ramette v. Bame (In re Bame)*, 251 B.R. 367 (Bankr. D.Minn.2000) (holding that the trustee succeeded to privilege regarding all communications that were in regards to estate administration and that took place while the debtor was a debtor in possession); *French v. Miller (In re Miller)*, 247 B.R. 704 (Bankr.N.D.Ohio 2000) (holding that whether the trustee has the power to waive an individual debtor's privilege must be made on a case-by-case basis); *Moore v. Eason (In re Bazemore)*, 216 B.R. 1020 (Bankr.S.D.Ga.1998) (holding that trustee may waive privilege where no harm would come to the individual debtors and where waiver would not have a chilling effect on the attorney-client relationship); *Whyte v. Williams (In re Williams)*, 152 B.R. 123 (Bankr.N.D.Tex.1992) (holding that trustee had the power to waive privilege in the case of an individual debtor where the trustee sought to pursue avoidance causes of action). *But see In re Silvio De Lindegg Ocean Developments of America, Inc.*, 27 B.R. 28 (Bankr.S.D.Fla.1982) (holding that a trustee could not waive an individual debtor's privilege).

This Court need not today decide whether the Chapter 7 trustee of an individual debtor may waive the attorney-client privilege in all circumstances. The issue presented here is narrower. This debtor served as a debtor in possession in an individual Chapter 11 case. The privilege sought to be waived relates to communications which she had with her attorney during the prosecution of that Chapter 11 case.

Upon the commencement of a Chapter 11 case, a debtor (individual or not) becomes a debtor in possession. That status confers the right to serve as the estate representative, but demands performance of the duties attendant to that responsibility. Pursuant to 11 U.S.C. § 1107(a):

Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

11 U.S.C. § 1107(a) (2003).

Chapter 11 trustees are required to "perform the duties of a [Chapter 7] trustee specified in sections 704(2), 704(5), 704(7), 704(8) and 704(9)." 11 U.S.C. § 1106(a)(1) (2003). And sections 704(2) and 704(7) could not be more explicit. "The trustee shall—

(2) be accountable for all property received; [and]

. . . . . . . . . . . . . . .

(7) unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest . . ."

11 U.S.C. §§ 704(2), (7) (2003).

■ Accordingly, when a debtor chooses to assume the duties of a Chapter 11 debtor in possession, that debtor assumes fiduciary duties to the estate and the creditors that would not have been applicable to the debtor had the case commenced under Chapter 7. *Bame*, 251 B.R. at 373. In effect, the Chapter 11 debtor in possession is the estate representative for the duration of the Chapter 11 case, and

has a duty not to waste, or in any way improperly deplete, the estate's assets. *Bame*, 251 B.R. at 373 (citing to Jeffrey C. Krause, *Whose Lawyer Are You: Fiduciary Obligation of Debtor and Debtor–in–Possession and Counsel*, 31 Beverly Hills B.A. J. 37, 39 (1997)). In addition, the debtor in possession has a duty to preserve any claims against third parties that might benefit the bankruptcy estate. *Williams*, 152 B.R. at 128. While the debtor in possession retains control over the attorney-client privilege during his/her stewardship, that control must be exercised consistent with the debtor's fiduciary duties. *Id.*

■ If a Chapter 11 case is converted to Chapter 7 case, the appointed Chapter 7 trustee is essentially a successor estate representative. *Bame*, 251 B.R. at 373. As such, the Chapter 7 trustee takes over the duties of the debtor in possession. In order to fulfill those duties, the Chapter 7 trustee also assumes the powers of the debtor in possession. *Williams* 152 B.R. at 129. Those powers include the power to waive the attorney-client privilege with respect to communications incident to the performance of the duties of the debtor in possession. *See id.* (holding that trustee succeeded to control over evidentiary privileges to prosecute avoidance causes of action).

An individual debtor, however, is not merely a manager that can be wholly replaced by the Chapter 7 Trustee. *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 356, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985). Thus, while this Court holds that, in certain circumstances, a Chapter 7 trustee may waive the attorney-client privilege held by an individual debtor in possession in a converted Chapter 11 case, that power is limited to postpetition communications which related

to the administration of property of the estate.

In the instant case, the Trustee seeks to depose Attorney Lupan and Lizotte concerning the Debtor's formation of Classic Asset Liquidation Management, LLC. The Trustee properly investigates whether assets of the estate were improperly transferred or dissipated in connection with the formation of that entity. Inasmuch as the Debtor, as debtor in possession, was under a duty not to so transfer or dissipate estate assets, the Trustee may waive the privilege as to communications surrounding that formation which occurred while the Debtor served as Chapter 11 debtor in possession. Attorney Lizotte did briefly represent the Debtor after the conversion of the case to Chapter 7.[9] The Trustee may not waive the privilege as to any communications that took place after the conversion date of October 15, 2002.

The Debtor's communications relating to retention and compensation of Attorney Lupan do not fall under attorney-client privilege, see supra Part II(A). The privilege does attach to other communications between the Debtor and Attorney Lupan. But the Trustee may waive that privilege with respect to communications relating to the malpractice claim, listed by the Debtor on her Schedules as an asset of the estate, so long as those communications took place during the period in which the Debtor served as debtor in possession during the pendency of the Chapter 11 case.

## IV. CONCLUSION

For all of the foregoing reasons, the Court rules that (1) the attorney-client privilege is inapplicable to communications between the Debtor and her attorneys with respect to their retention or compen-sation for services rendered during the pendency of this bankruptcy case; and (2) the Chapter 7 trustee holds, and is empowered to waive, any attorney-client privilege that attaches to postpetition communications between the Debtor, while a debtor in possession in the Chapter 11 case, and Attorneys Lupan and/or Lizotte relating to the disposition of any asset, including, without limitation, any prepetition malpractice claim against Attorney Lupan or the postpetition formation of any company in which the Debtor is alleged to have an interest. Absent assertion of any other applicable privilege, Attorneys Lizotte and Lupan will be ordered to testify consistent herewith upon resumption or institution of any properly scheduled and authorized examination by the Trustee or IEI.

A separate order in conformity with this Memorandum of Decision shall enter herewith.

## ORDER

For reasons set forth in this Court's Memorandum of Decision of even date, the Court:

1. rules that (1) the attorney-client privilege is inapplicable to communications between Denise J. Eddy (the "Debtor") and attorney Walter Lupan ("Lupan") with respect to the retention of or compensation to attorney Lupan for services rendered during the pendency of this bankruptcy case; and (2) John A. Burdick, Jr. (the "Trustee") as Chapter 7 trustee holds, and is empowered to waive, any attorney-client privilege that attaches to postpetition communications between the Debtor, while a debtor in possession in the Chap-

---

**9.** Attorney Lizotte filed an Expedited Motion to Withdraw As Attorney of Record on October 16, 2002, the day after conversion. Attor-ney Lizotte's representation was not terminated, however, until November 1, 2002, after successor counsel had appeared.

ter 11 case, and attorney Lupan and/or attorney Andrew Lizotte ("Lizotte") relating to the disposition of any asset, including, without limitation, any prepetition malpractice claim against attorney Lupan or the postpetition formation of any company in which the Debtor is alleged to have an interest; and

2. orders attorneys Lizotte and Lupan to testify consistent herewith, absent assertion of any other applicable privilege, upon resumption or institution of any properly scheduled and authorized examination by the Trustee or International Enterprises Inc.