In re Dwight E. STOUTAMIRE.

Bankruptcy No. 95–42011.

United States Bankruptcy Court,
S.D. Georgia,
Savannah Division.

Sept. 30, 1996.

M.E. Geary, Hinesville, GA, for Debtor.

Sylvia Ford Brown, Chapter 13 Trustee, Savannah, GA.

### MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter is before the Court on a Motion to Dismiss With Prejudice filed by the Chapter 13 Trustee ("Trustee"). Trustee contends that Debtor's failure to disclose a personal injury law suit settlement prior to the filing of the bankruptcy petition is grounds for a prejudicial dismissal. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(A) & (L). The Court will dismiss the bankruptcy case without prejudice based upon the following findings of fact and conclusions of law which are published in compliance with Federal Rule of Bankruptcy Procedure 7052.

### FINDINGS OF FACT

Debtor filed this case under Chapter 13 of the Bankruptcy Code on September 27, 1995. Five months prior to the filing, Debtor was injured in a fight with a bar bouncer. Debtor claimed that he was wrongfully beaten by the bouncer that night. Although no law suit was ever filed, Debtor received $6,000.00 as settlement for the claim. Debtor did not list the pending claim or the settlement in the bankruptcy schedules. In addition, Debtor failed to reveal the settlement at the § 341(a) Meeting when asked whether any law suits were pending. Debtor claims that he did not believe the disclosure of the claim was required in response to the question that was asked since no suit had been filed.

A hearing was held on June 11, 1996 to determine whether the case should be dismissed, whether any such dismissal should be with prejudice and whether sanctions should be imposed against the attorney for Debtor. At the hearing, the Court questioned Debtor's attorney, Murl E. Geary, as to whether Debtor concealed the asset or whether, instead, Mr. Geary failed to properly examine Debtor in preparing the schedules. It appears that the schedules were completed by Jennifer Gavin, a legal secretary in Mr. Geary's office. Although it is clear that Ms. Gavin had five months of training, it is not so clear how closely her work was monitored by Mr. Geary or whether Mr. Geary was involved at all in the preparation of the petition and schedules.

In preparing to file a bankruptcy case for a client, Mr. Geary's firm used a form titled "Bankruptcy Interview" to examine the client and compile information received in response. The adequacy of the Bankruptcy Interview form as a proper tool for this purpose was considered at the June 11th hearing. Mr. Geary insisted that Debtor should have revealed the existence of the settlement in response to question number 9 on Form 7 of the interview sheet. That question reads as follows:

Have you consulted with an attorney or Consumer Credit Counseling within the

last year? (so[sic], give the date, whether it was a bankruptcy or other matter, and the amount of fees paid).[1]

Ms. Gavin said that Debtor did not give any information in response to that question. Mr. Geary added that question 33 to Schedule B of the interview sheet also provided Debtor with an opportunity to disclose the settlement. In relevant part, that question asks debtors to list the following:

> Any other property of any value of any kind including stocks, bonds, interest in insurance policies, bonds, profit sharing, pensions, valuable books, antiques, pictures, art, anyone owing any money to you, aircraft, office equipment or supplies, or any other property you own that has any value at all.[2]

Trustee contends that Debtor had further opportunities to reveal the settlement in response to either interview question number 4 of Form 7 which asks for "[l]awsuits filed against you" and "[g]arnishments filed against you"[3] or Question 20 to Schedule B of Official Form 6.[4]

Upon further questioning of Ms. Gavin regarding the questionnaire form and Mr. Geary's level of involvement in the schedule preparation process, Mr. Geary asserted the attorney-client privilege. Mr. Geary argued that it was a violation of the privilege to require his employee, Ms. Gavin, to reveal whether or not any specific questions were asked and answered during the intake interview.

## CONCLUSIONS OF LAW

█ In defending the adequacy of the intake interview questionnaire, Mr. Geary contended that the interview questions were sufficient to prompt Debtor to reveal the settlement received in satisfaction of the personal injury claim. This Court does not agree. Interview question number 9 on Form 7 is not sufficient for this purpose.[5] In addition, interview question 33 on Schedule B is not very likely to reveal very much at all about recent settlements because it is so exhaustive in its coverage.[6]

Trustee argued that, even if those interview questions were not sufficient, the settlement should have been disclosed in response to interview question 4 of Form 7 which asked for "[l]awsuits filed against you." Again, the Court does not agree. Sadly, that question is not designed carefully enough to address the matter of the pending claim in this case. By asking for suits which had been *filed* to which Debtor was a party, the interview question was more narrow in its scope than the question on the official forms.[7] Here, no suit had been *filed* by Debtor at the time of the commencement of this bankruptcy case.

In addition, Trustee contended that interview question 20 of Schedule B would have also been sufficient to elicit the response. It

---

1. This interview question was apparently intended to elicit information necessary for a proper response to question number 9 on Official Form 7 which reads as follows:

 List all payments made or property transferred by or on behalf of the debtor to any persons including attorneys for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of a petition in bankruptcy within one year immediately preceding the commencement of this case.

2. This interview question was apparently intended to elicit information necessary for a proper response to question 33 to Schedule B of Official Form 6 which instructs one to list the following: "Other personal property of any kind not already listed."

3. This interview question was apparently intended to elicit information necessary for a proper

 response to question 4 of Official Form 7 which states in relevant part:

 a. List all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case....

4. Question 20 to Schedule B of Official Form 6 asks the debtor to list the following:

 Other contingent and unliquidated claims of any nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each.

5. *See,* supra, note 1 and accompanying text.

6. *See,* supra, note 2 and accompanying text.

7. The official question just asks for all suits to which the debtor is a party, not just the ones which have been filed. *See,* supra, note 3.

appears, however, that there is no such question 20 on Schedule B of the interview questionnaire.[8]

At the June 11th hearing, the Court inquired into the content of the conversations with Debtor during the intake interview. When this line of questioning began with Ms. Gavin, the legal secretary who conducted the interview, Debtor's counsel asserted the attorney-client privilege. Accordingly, this Court must resolve this attorney-client privilege issue first to see whether this evidence should be considered in determining the merits of Trustee's Motion to Dismiss.

### Scope of Attorney–Client Privilege

■ When considering whether or not an attorney must refuse to testify as to information received as a result of the attorney-client relationship, the Court must look both to the attorney-client privilege rules and to the ethical considerations which prevent an attorney from revealing confidences and secrets of a client. The attorney-client privilege rules are governed by the Official Code of Georgia, and an attorney's ethical guidelines are covered by Georgia's Code of Professional Responsibility.

■ Under Georgia law, a client's communications to his attorney are privileged. The statute specifically states that:

[c]ommunications to any attorney or to his employee to be transmitted to the attorney pending his employment or in anticipation thereof shall never be heard by the court. The attorney shall not disclose the advice or counsel he may give to his client, nor produce or deliver up title deeds or other papers, except evidences of debt left in his possession by his client. This Code section shall not exclude the attorney as a witness to any facts which may transpire in connection with his employment.

O.C.G.A. § 24–9–24. Two levels of this privilege need to be examined—(1) under what conditions does the privilege extend to communications made to the employee of an attorney and (2) whether the privilege will

protect testimony regarding the questions asked of a debtor for the purposes of filling out bankruptcy schedules.

■ It is clear that communications made by a client to an attorney's employee should be treated no differently than if they were made to the attorney himself. The text of O.C.G.A. § 24–9–24 specifically uses the language "communications to any attorney *or to his employee.*" Georgia case law further supports this position. The Georgia Supreme Court once noted that an employee of an attorney:

by reason of his or her position, must frequently have almost as much information as to the confidential business of the client as the attorney himself; and it would be clearly against the rule to allow such an assistant to be subpoenaed and required to testify as to matters where the knowledge acquired was through the employment.... [Such employee is] neither competent nor compellable to testify, exactly as the attorney himself would be held incompetent and uncompellable to testify, [if] offered as a witness.

*Taylor v. Taylor,* 179 Ga. 691, 693, 177 S.E. 582 (1934). Thus, the attorney-client relationship extends to the network of employees acting under the direction of the attorney.

■ This Court must next examine whether the privilege protects testimony as to the filling out of schedules to be filed with the court. Both Georgia courts and federal bankruptcy courts have provided some insight into this issue.

It has been held that "[c]ommunications made by a client to an attorney, for the purpose of being imparted by him to others, do not fall within the inhibitions of the law that render an attorney as a witness incompetent to testify to statements or disclosures made to him by his client." *Riley v. State,* 180 Ga. 869, 870, 181 S.E. 154 (1935). The idea is that if the client provides information which is to be ultimately given to a third party, the client would not have the expectation that the information would be confiden-

---

**8.** The Trustee may have been referring to Official question 20 of Schedule B. For the text of that question, see, supra, note 4.

tial, and therefore, would not need the protection of the privilege.

In the bankruptcy context, one court held that "[t]here is no expectation that information disclosed for the purpose of assembling a bankruptcy petition and supporting schedules will be held confidential." *In re French,* 162 B.R. 541, 548 (Bankr.D.S.D.1994). The issue in *French* was whether to permit a legal assistant of the debtor's attorney to be deposed regarding communications (by the debtor to such legal assistant) which were necessary to prepare bankruptcy schedules. Apparently, one of the creditors in that case wanted to determine the nature of an omission of an asset from the schedules. In support of its holding, the court explained:

> It is rare that this Court would condone disclosing any conversations between a client and his attorney, but, in bankruptcy, debtors are obligated to disclose all assets and liabilities as part of an honest financial reorganization. The initial interview that [takes] place ... [is] simply a way of identifying financial facts—debts and assets— similar to a plaintiff reciting facts to constitute a publicly filed complaint against a particular defendant. In bankruptcy, a debtor's assets and liabilities are the financial facts that constitute the publicly filed petition for relief. That kind of disclosure is not the same as a client who seeks and obtains professional bankruptcy counseling like how to maximize assets through prepetition planning or what strategies might be used to restructure existing debt.

*Id.* *See also United States v. White,* 950 F.2d 426, 430 (7th Cir.1991) (since bankruptcy schedules contain information that is to be disclosed on documents publicly filed with the court, there is no intent for the information to be held in confidence, and therefore, the information is not privileged).

After careful consideration, this Court finds that the communications which Mr. Geary intends to protect by asserting the attorney-client privilege go beyond the mere revealing of information which would ultimately end up as a public disclosure. The information sought here deals with the conversations and communications between lawyer and client with respect to intake interview questions. While the responses elicited from that questionnaire will be used to prepare the schedules, all of the information contained therein may or may not ultimately be disclosed publicly in such schedules. The legal decision regarding whether or not certain information obtained in the intake interview should be included in the schedules and the conversations that occurred in gathering that information are necessarily protected. Accordingly, this Court concludes that the attorney-client privilege has been properly asserted by Mr. Geary.

At the June 11th hearing, it was argued that Directory Rule 4–101 of the Code of Professional Responsibility governing the "Preservation of Confidences and Secrets of a Client" made it permissible for Mr. Geary and Ms. Gavin to testify in this case. According to DR 4–101 of the Code of Professional Responsibility:

(A) "Confidence" refers to information protected by the attorney-client privilege under applicable law, and "secrets" refers to other information gained in the professional relationship that the client has requested to be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.

(B) Except when permitted under DR 4–101(C), a lawyer shall not knowingly:

(1) reveal a confidence or secret of his client;

(2) use a confidence or secret of his client to the disadvantage of the client;

(3) use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure.

(C) A lawyer may reveal:

(1) confidences or secrets with the consent of the client or clients affected;

(2) confidences or secrets when permitted under Disciplinary Rules or required law or court order;

(3) the intention of his client to commit a crime and the information necessary to prevent the crime;

(4) confidences or secrets necessary to establish or collect his fee or to defend

himself or his employees or associates against an accusation of wrongful conduct.

(D) A lawyer shall exercise reasonable care to prevent his employees, associates, and others whose services are utilized by him from disclosing or using confidences or secrets of a client, except that a lawyer may reveal the information allowed by DR 4–101(C) through an employee.

With regards to DR 4–101, two issues need to be addressed—(1) whether an attorney is ethically prevented from testifying as to the information obtained in the preparation of bankruptcy schedules and (2) whether that ethical constraint is imparted to an attorney's employee who prepared the schedules.

■ It has been suggested to this Court that the situation in the instant case is governed by DR 4–101(C)(4). According to that section, an attorney is permitted to reveal "confidences or secrets necessary to ... defend himself or his employees or associates against an accusation of wrongful conduct." Advisory Opinion No. 27 to DR 4–101 provides insight into what type of "wrongful conduct" the rule intends to address. That opinion states that " '[t]he rule is settled by all the authorities that in litigation between the client and his attorney, the attorney, of course, has the right to make a full disclosure bearing upon the litigation, for the purpose of defending his property rights....' " *See* Advisory Opinion No. 27 to DR 4–101 (1980) (quoting *Hyde v. State,* 70 Ga.App. 823, 827, 29 S.E.2d 820 (1944)). Thus it appears that the "wrongful conduct" contemplated by the DR 4–101(C)(4) might, for example, be the subject of a malpractice action brought by the client whose confidences or secrets the attorney wishes to reveal.

In the instant case, there has been no legal malpractice action filed by Debtor. It follows that there has been no "accusation of wrongful conduct" within the meaning of DR 4–101(C)(4). Likewise, the Court believes that none of the other provisions of subsection (C) are applicable. Since there is no applicable exception to the rule preventing an attorney and his employees from revealing client confidences and secrets, this Court concludes that Mr. Geary is ethically prohib-

ited from testifying as to the facts surrounding the Court's present inquiry. Further, since DR 4–101(D) directs an attorney to "prevent his employees, associates, and others whose services are utilized by him" from disclosing client confidences and secrets (except as permitted by subsection (C)), the motion is well made, and Ms. Gavin will likewise not be compelled to testify as to the relevant events.

### Duty to Review Non-attorney Prepared Schedules

■ In Georgia it is unlawful for one who is not a duly licensed attorney to practice law. O.C.G.A. § 15–19–51. According to Canon 3 of the Code of Professional Responsibility of the State Bar of Georgia, a lawyer is to help to prevent this violation from occurring. DR 3–101(A) takes this concept a step further by stating that "[a] lawyer shall not aid a nonlawyer in the unauthorized practice of law." Whenever a lawyer delegates responsibilities to an employee, he or she must be careful not to violate this rule. The Ethical Considerations and Advisory Opinions accompanying that rule provide further explanation of its scope.

According to EC 3–6, an attorney should provide proper supervision of any non-lawyer employee who is engaged in activities which might be construed as the unauthorized practice of law. Specifically, the text therein states:

A lawyer often delegates tasks to clerks, secretaries, and other laypersons. Such delegation is proper if the lawyer maintains a direct relationship with his client, supervises the delegated work, and has complete professional responsibility for the work product. This delegation enables a lawyer to render legal service more economically and efficiently.

Advisory Opinion No. 21 stresses the point that if an attorney is going to delegate duties, he must provide proper supervision. The opinion holds that

strict adherence to a program of supervision and direction of a paralegal is required in order to avoid any charges that the attorney is aiding his paralegal in the

unauthorized practice of law.... [D]elegation of activities which ordinarily comprise the practice of law is proper only if the lawyer maintains a direct relationship with the client involved, supervises and directs the work delegated to the paralegal and assumes complete ultimate responsibility for the work product produced by the paralegal. Supervision of the work of the paralegal by the attorney must be *direct and constant* to avoid any charges of aiding the unauthorized practice of law.

Ga. Disciplinary Board, Advisory Op. 21 (1977) (emphasis added). While it is clear that supervision of the non-lawyer is required, the level of supervision which would be adequate is not apparent from the rule or the advisory opinion. The only directive is that the supervision be "direct and constant." Case law provides us with further guidance here.

The United States Bankruptcy Court for the Northern District of California addressed the non-attorney supervision issue with respect to paralegals who prepare bankruptcy schedules. *In re Hessinger & Associates,* 192 B.R. 211 (N.D.Ill.1996). That court found attorneys to have aided in the unauthorized practice of law by allowing a substantial amount of legal work to be performed by paralegals without adequate supervision. *See id.* at 222–23. The court used the following facts, inter alia, to support its recommendation that the attorneys be sanctioned:

(1) it was routine practice for paralegals to complete bankruptcy schedules which a lawyer signed later;

(2) one paralegal admitted preparing bankruptcy schedules, filing bankruptcy petitions and making decisions on which exemptions clients should claim, all without proper supervision; and

(3) the firm was organized much like a production line, with little or no review by attorneys.

*See id.* With these facts, the court concluded that "a substantial amount of legal work [was] in fact performed by paralegals or non-lawyer 'credit specialists' with little or no supervision from attorneys." *Id.* at 222. While the court recognized that paralegals are often used for routine tasks such as

filling out bankruptcy schedules, it refused to decline to enforce the ethical rules, even where their application requires attorneys to perform work which might otherwise be done less expensively. *Id.* at 223.

The Eastern District of Michigan Bankruptcy Court provided further example in *Matter of Bright,* 171 B.R. 799 (Bankr. E.D.Mich.1994). The court stated that under the Michigan Rules of Professional Conduct, a lawyer is not adequately supervising a non-lawyer if:

(1) the lawyer does not know of the existence or content of meetings between the non-lawyer and the debtor;

(2) if the lawyer relies solely on the non-lawyer as intermediary, neglecting to meet directly with the client; or

(3) if the lawyer fails to use his independent professional judgment to determine which documents prepared by the non-lawyer should be communicated outside the law office.

*Id.* at 805. While the court examined this issue under Michigan's ethical rules, the opinion still provides some useful guidelines.

In the Eleventh Circuit, the treatment of supervision of non-attorney work has been similar. The Northern District of Georgia Bankruptcy Court used DR 3–101(A) and EC 3–6 to support its holding that the attorney in question "totally abdicated his duties, responsibilities, and judgment as an attorney to non-attorney personnel." *In re Martin,* 97 B.R. 1013, 1020 (Bankr.N.D.Ga.1989). The court concluded that the attorney had aided in the unauthorized practice of law with the following reasoning:

The evidence reflects that the most fundamental and minimal of professional services required of an attorney to his client are lacking. This bankruptcy petition was prepared, signed, and filed by someone other than [the attorney], without his participation. The apparent casual handling of this case does not reflect any actual attorney contact or representation up to the time of filing. Whatever the representation, it was performed by non-attorneys.

*Id.* at 1020–21. It should be noted that, in *Martin,* the non-attorney did everything up

to the time of filing, including signing the actual attorney's name on the petition and other pleadings (although with the attorney's permission). *See id.* at 1020. This fact seemed to be crucial to the court's holding because it showed that absolutely no client contact or supervision of the non-attorney's work had taken place to that point. *See id.* at 1020–21.

### Attorney Sanctions

 This Court is seriously concerned about the inadequacies in the questionnaire used in the initial interview of Debtor. In addition, and perhaps even more serious a problem, is the extent of supervision Mr. Geary exercised over his non-attorney employee and the degree of his own personal involvement in the preparation of Debtor's bankruptcy schedules. Unfortunately, due to the exercise of the attorney-client privilege and a record otherwise devoid of concrete information regarding the process of preparing the schedules, the facts in evidence here do not permit any conclusion to be drawn as to the extent of Mr. Geary's personal involve-ment. Accordingly, there is nothing presented which would warrant the imposition of sanctions. Nonetheless, it is appropriate to emphasize the importance of an attorney's duty to personally supervise non-lawyer personnel who are employed in activities that might be construed as the unauthorized practice of law.

 In conclusion, this Court finds that the omission from the schedules in this case of the settlement received by Debtor in satisfaction of the personal injury claim, is sufficient cause for this case to be dismissed. However, due to the lack of evidence regarding fault for this omission, the dismissal will be without prejudice.

An order in accordance with this memorandum opinion will be entered on this date.